**UNITED STATES of America, Plaintiff,**

v.

**George W. ROBINSON, Defendant.**

**Crim. A. No. 22236.**

United States District Court,
W. D. Missouri, W. D.

June 18, 1969.

Calvin K. Hamilton, U. S. Atty., Kansas City, Mo., for plaintiff.

John H. Kreamer, Kansas City, Mo., for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL

BECKER, Chief Judge.

In this criminal action, a private detective was convicted of an obviously illegal wiretap (interception and divulgence) of telephone calls of an unfaithful wife of a client of defendant.

In the information filed herein on July 12, 1966, the defendant, a private

---

investigator, was charged in 12 counts with 12 separate violations of Section 2, Title 18, U.S.C., and Sections 501 and 605, Title 47, U.S.C. (Prior to trial only private persons have been prosecuted for violations of these statutes.) The separate counts charged 12 acts of intercepting (by wire tap) and divulging of the communications intercepted thereby. The communications alleged to have been intercepted and divulged were telephone conversations all between one Saundra Jane Lloyd at one end of the line and Eugene G. Peterson, L. E. Shepard, Bessie Koller, Stephen J. Pratt, and Alfred E. Couch on the other end. Defendant plead not guilty to all counts on July 25, 1966. On April 3, 1967, Counts II, IV, X and XIII of the information were dismissed by the Government pursuant to Rule 48(a), F.R.Crim. P. Counts III, IX and XI were subsequently dismissed under the same rule on April 5, 1967. Trial by jury was subsequently had in this Court. On April 7, 1967, the jury under the instructions properly returned verdicts of guilty on Counts I, V, VII and VIII and a verdict of not guilty on Count VI.

The defendant's counsel attempted to submit to the jury the defense of unconstitutional systematic discrimination against private person in enforcement of the statutes but was not permitted to do so. With leave of Court the question, which may have been waived under Rule 12, F.R.Crim.P., was permitted by the Court to be reserved as a ground for a motion for judgment of acquittal. Rule 12(b) (2), F.R.Crim.P.

Thereafter, the defendant filed a motion for judgment of acquittal under Rule 29(c), F.R.Crim.P., or in the alternative, for a new trial under Rule 33, with respect to the counts on which verdicts of guilty had been returned.

Except for denial of the motion for acquittal there was no error in the trial. So the motion for new trial should be denied.

The acts charged in the counts upon which defendant was found guilty by the jury were alleged in the information to have taken place on August 16, 1964; August 17, 1964; and August 18, 1964 (2). Much documentary evidence has been adduced by defendant on his motion for acquittal or for new trial to show that, during this time, and before and after, the Government itself, while it was not explicitly exempt itself from the operation of the statute, engaged in its systematic violation. This evidence proves that at least from May 21, 1940, when wire tapping was advised by President Franklin D. Roosevelt in a message to Attorney General Jackson as an acceptable method of protecting the national security (See Long, The Intruders (Praeger Publications, 1967) at page 89), through the time in question here, the agencies of the federal government did in fact engage in extensive wire tapping activities in violation of Sections 605 and 501, which come within the prohibition of the same statutes under which the defendant in the case at bar has been charged. These activities have continued right up to the time of the alleged offense in the case at bar. See Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576; Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176; Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248; and Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L. Ed. 944, 66 A.L.R. 376. In Alderman v. United States, *supra*, the Supreme Court of the United States held that a defendant may require production by the Government of transcripts of any illegal electronic surveillance or wire taps of his conversations, or those of people on his premises. The Government was thus obliged to yield records of FBI surveillance of James Hoffa, Cassius Clay, Martin Luther King, Jr., and Elijah Muhammad, among many others. The abundance of other materials which tend to prove the systematic violation by the Government of the wire tapping statute

is great.[1] The necessary conclusion from this evidence is that there has been systematic discrimination in the enforcement of the act against the defendant in this case, which renders the prosecution invalid. As Professor Moreland has said in his work cited above:

"I do not feel that the Department of Justice can, in good conscience, prosecute persons for a practice engaged in by the Department itself and regarded as legal by the Department." Moreland, Modern Criminal Procedure, at 143.

Further, the American Bar Association Project on Minimum Standards for Criminal Justice noted in its Standards Relating to Electronic Surveillance (Tentative Draft, June 1968) at 18, n. 30:

"No prosecution, however, has ever been brought under the statute, and no public justification has been offered why the past and present practice of the United States Department of Justice is not in violation of the statute."

▇ Although an act or statute may be valid on its face, intentional discriminatory enforcement thereof can render its discriminatory enforcement constitutionally invalid. In Yick Wo v. Hopkins, 118 U.S. 356, 374, 6 S.Ct. 1064, 1073, 30 L.Ed. 220, 227, the United States Supreme Court held:

"Though the law itself be fair on its face, and impartial in appearance, yet, if it is applied and administered by public authority with an * * * unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the constitution."

See also Anno. 4 A.L.R.3d 393.

▇ The similarity of circumstances of the interception and divulgence by defendant and the Government in wire tapping operations are readily apparent. While the Government attempts to justify its wire tapping operations in the paramount interests of public safety and on an unsound definition of "divulgence," the statute in question contains no such exceptions. See Long, *op. cit. supra*, at page 93; Donnelly, Electronic Eavesdropping, 38 Notre Dame Lawyer 667.[2] Thus, no reasonable

1. Such authorities include the following:
American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Electronic Surveillance (Tentative Draft, June 1968).
Moreland, Modern Criminal Procedure.
Long, The Intruders (Praeger Publications, 1967).
Hearings before the Subcommittee on Administrative Practice and Procedure of the Committee on the Judiciary, United States Senate, 89th Congress, 2d Sess., Sept. 14, 15, 1966, pp. 2610, 2611, 2623, 2641, 2642, 2643, 2652, 2690, 2693, and 2694.
—————,
June 7, 8, 9, 14 and 16, 1966, particularly the testimony of witnesses William J. Hussey, Earle E. Jaycox, and Watson Roper, Jr.
—————,
July 13, 14, 15, 19, 20, 21, 27 and August 9, 1965, particularly the testimony of witnesses Vernon Carpenter, Sheldon S. Cohen, Cresson O. Davis,

Joseph R. Harmon, Vicent Hillman, and Nicholas De B. Katzenbach.
Westin, Privacy and Freedom, 1967.

2. It is uncertain whether divulgence is necessary to violate § 605. Benanti v. United States, 355 U.S. 96, 100, 78 S. Ct. 155, 2 L.Ed.2d 126; Rathbun v. United States, 355 U.S. 107, 78 S.Ct. 161, 2 L.Ed.2d 134. Furthermore, the Government contention that interdepartmental communication is not divulgence is hardly plausible in view of the stated purpose of § 605 to protect individual privacy. The efficacy of such communications to offend privacy is clear when they result in the subject's being charged and brought to trial. Where the direct fruits of such wire tapping have sometimes not been disclosed as evidence, the interdepartmental communication plays a more important role in violating the privacy of the accused. See Donnelly, Electronic Eavesdropping, 38 Notre Dame Lawyer, at 672 et seq.

basis for systematic discriminatory enforcement of the statute can be found. Nor does the use by the Government of electronic microphones which do not penetrate the wire or property of others differentiate its activity from that of the defendant in contemplation of law. While it has been formerly held that a microphonic device did not constitute "interception" within the terms of § 605, *supra* (see United States v. Borgese (S.D.N.Y.) 235 F.Supp. 286, vacated (C.A.2) 372 F.2d 950), the idea that a device does not "intercept" simply because it does not penetrate the communications medium has been discredited by the United States Supreme Court decision in Katz v. United States, *supra*. While that case defined "protected persons" for Fourteenth Amendment purposes, it is apparent that, in the context of this case, the purposes of the Fourth Amendment and those of § 605 are much the same. As the court stated in *Katz*, "[t]he Government's activities in electronically listening to and recording the petitioner's words violated the privacy upon which he justifiably relied while using the telephone booth." 389 U.S. at 353, 88 S.Ct. at 512, 19 L.Ed. 2d at 583. Similarly, "[t]he purpose of section 605 is to prohibit blatant public or private encroachments on the privacy of messages and the integrity of the communications system." United States v. Russo (E.D.Pa.) 250 F.Supp. 55, 58, and cases therein cited; Bubis v. United States (C.A.9) 384 F.2d 643, 647. In *Katz*, the Government relied on the district court decision in *Borgese* to support its contention that a microphone attached to a telephone booth did not violate this purpose. The Supreme Court held that attached microphone methods of interception were in law no different from interception by actual penetration into the line of communication. Thus, there can be no rational distinction between the activity of the Government and that of the defendant in the case at bar. Therefore, the application of the statutes here involved to the defendant in the case at bar represented a systematic fixed and continuous policy of unjust discrimination in their enforcement in violation of the Fifth Amendment to the Constitution of the United States. See 16 Am.Jur.2d, Constitutional Law § 541.

Moreover, there is no showing that the Government during the relevant period refrained from penetration and cutting of wires to effect taps.

For the foregoing reasons, it is

Ordered that defendant's motion for acquittal under Rule 29(c), F.R.Crim.P., be, and the same is hereby, granted. It is further

Ordered and adjudged that defendant be, and he hereby is, acquitted of the charges in Counts I, V, VII and VIII of the information. It is further thereby

Ordered and adjudged that defendant be, and he is hereby, discharged.