COMMONWEALTH *vs.* PETER LaBELLA.

Middlesex.    January 8, 1974. — February 4, 1974.

Present:   TAURO, C.J., REARDON, BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*Lewdness. Constitutional Law,* Due process of law. *Statute,* Validity. *Practice, Criminal,* Exceptions: failure to save exception.

Omissions from the charge or instructions of the judge at a criminal trial were not brought before this court in the absence of the saving of appropriate exceptions. [552-553, 554]

This court declined to reëxamine its holding in *Jaquith* v. *Commonwealth,* 331 Mass. 439, 443, that G. L. c. 272, § 35, is not unconstitutional on its face upon appeal by a defendant convicted thereunder who contended that the statute was "overly broad" because covering the sexual conduct of consenting adults, but who did not bring himself within such coverage. [553-554]

INDICTMENT found and returned in the Superior Court on March 14, 1972.

The case was tried before *Lappin,* J.

*Robert A. Stanziani* for the defendant.

---

*Terence M. Troyer,* Assistant District Attorney, for the Commonwealth.

BRAUCHER, J. The defendant was convicted of committing an unnatural and lascivious act and was sentenced to a house of correction for two and one-half years.[1] G. L. c. 272, § 35. He appeals pursuant to G. L. c. 278, §§ 33A-33G, asserting (1) that there was error in the judge's failure to instruct the jury to take contemporary standards into account, and (2) that the governing statute is "overly broad" because it covers the conduct of consenting adults. We hold that neither point is properly before us, and affirm the conviction.

The victim, police witnesses and the defendant testified, and we first summarize the undisputed evidence. The victim was an airline hostess, new to Boston, and was walking along Massachusetts Avenue between 9:45 and 10:15 P.M., carrying a heavy suitcase in snow and rain from a subway station to an apartment on Beacon Street she shared with other women. The defendant was thirty-eight years old, lived in a suburb with his wife and three children, and worked forty hours a week in a bakery and two days a week as a barber. After spending about an hour and one-half at a Boston bar, he drove his car slowly along the street near the victim. They had never met before.

On the defendant's invitation, the victim entered the car, and they drove in the direction of her apartment, but he drove on across the Massachusetts Avenue bridge into Cambridge, turned right onto Memorial Drive and parked the car. At this point, although the defendant had opened the right hand door of the car to let the victim in, the door handle was no longer on the door, and the door could not be opened from the inside. The defendant proceeded to fondle the victim, partially undressed her, had oral contact with her genital area and had intercourse with her. She put her clothes on; a police cruiser drove up and stopped; she rolled down

---

[1] The defendant was also indicted for rape, confinement against the victim's will, and assault by means of a dangerous weapon. The four indictments were tried together, but a mistrial was declared on the other three after the jury reported inability to reach verdicts.

the car window and waved to the police officers. One of them opened the door, and she left the vehicle and told him that the defendant had just raped her. The defendant was then arrested. A knife was taken from his pocket, and a door handle was found between the seat and back of the front seat of the car.

Other matters were disputed. The victim testified that she had resisted the defendant's advances, but stopped resisting when he pushed a knife toward her neck and shoulder. The defendant testified that she was entirely willing and coöperative until the police arrived. She testified that he did not physically hurt her.

1. The judge charged the jury substantially in the words of *Jaquith* v. *Commonwealth,* 331 Mass. 439, 442 (1954).[2] He said that "no element of willingness or consent or any such thing" was involved, repeated that "the act itself" was the offence if it was committed and was "a deviation from the normal and accepted standards," noted that the victim and the defendant testified to the same conduct and concluded that portion of the charge by saying that if the act "does not fit the definition as I have given it to you, or if you disbelieve that it ever took place, then, of course, your verdict should be that of not guilty."

After the charge, counsel for the defendant told the judge that he had "left out whether it is unnatural behavior, according to our standards. You left that out when you said, 'If he said they did this and if she said they did this, then he's guilty.'" The judge replied, "If it meets the definition that I gave them. That's what I told them." Counsel took no exception at this point, but shifted to criticism of the charge with respect to a different indictment.

The defendant now argues that the judge should have instructed the jury, as a cross section of the community, to apply their own attitudes and convictions, citing *Com-*

---

[2]The words "unnatural act" "signify irregular indulgence in sexual behavior, illicit sexual relations, and infamous conduct which is lustful [,obscene] and in deviation of accepted customs and manners." The bracketed word appeared in the *Jaquith* opinion but not in the charge in this case.

*monwealth* v. *Isenstadt,* 318 Mass. 543, 551 (1945), and *Jaquith* v. *Commonwealth,* 331 Mass. 439, 443 (1954). It seems very doubtful that the comment of counsel quoted above adequately brought this point to the attention of the judge. In any event, without suggesting that the point has merit, we hold that it is not before us in the absence of an appropriate exception.

2. The defendant relies on the opinion of Mr. Justice Douglas in *Griswold* v. *Connecticut,* 381 U. S. 479, 485 (1965), as recognizing a "zone of privacy created by several fundamental constitutional guarantees." He submits that criminal sanctions cannot be imposed for "any type of sexual activity committed in private between consenting adults," and argues that G. L. c. 272, § 35, does impose such sanctions and must therefore be nullified as "overly broad."

It is a traditional principle that "a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court." An exception has been made in the area of the First Amendment to the United States Constitution, but even in that area the overbreadth doctrine "has been employed by the Court sparingly and only as a last resort. Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute. . . . Equally important, overbreadth claims, if entertained at all, have been curtailed when invoked against ordinary criminal laws that are sought to be applied to protected conduct. . . . Additionally, overbreadth scrutiny has generally been somewhat less rigid in the context of statutes regulating conduct in the shadow of the First Amendment, but doing so in a neutral, noncensorial manner." *Broadrick* v. *Oklahoma,* 413 U. S. 601, 610-615 (1973). Compare *Gooding* v. *Wilson,* 405 U. S. 518, 520-521 (1972).

The defendant does not assert that the present case involves freedom of expression or communication in a sense which would bring into play the "overbreadth" doctrine

associated with the First Amendment. In the *Griswold* case "the right of privacy in question inhered in the marital relationship." *Eisenstadt* v. *Baird,* 405 U. S. 438, 453 (1972) (upholding the same rights for unmarried persons). Compare *Stanley* v. *Georgia,* 394 U. S. 557, 568 (1969), depending "not on any First Amendment right to purchase or possess obscene materials, but on the right to privacy in the home." *United States* v. *12 200-ft. Reels of Super 8MM. Film,* 413 U. S. 123, 126 (1973). See *United States* v. *Orito,* 413 U. S. 139, 141-143 (1973). The right to privacy in the home is not involved in the present case, and the defendant cannot invoke the rights of others in hypothetical situations. See *United States* v. *Thirty-seven (37) Photographs,* 402 U. S. 363, 375-377 (1971) (opinion of White, J.).

We therefore decline to reëxamine our holding in *Jaquith* v. *Commonwealth,* 331 Mass. 439, 443 (1954), that G. L. c. 272, § 35, is not unconstitutional on its face. We note that the Supreme Court of the United States has recently rejected a "special claim to constitutional protection" for "conduct involving consenting adults only." *Paris Adult Theatre I* v. *Slaton,* 413 U. S. 49, 68 (1973). But the special claim made here, even if sustained, would not render the statute unconstitutional on its face. Hence it is not properly before us.

The defendant in effect asks us to hold that there was error in the judge's failure to submit to the jury issues of "privacy" and "consent." The judge's instructions did not mention privacy, and they clearly withdrew any issue of consent from consideration by the jury. Counsel for the defendant was experienced, aggressive and persistent; he commented on other aspects of the instructions with respect to unnatural and lascivious acts, but took no exceptions with respect to them; he made no suggestions with respect to privacy or consent. Either his present contention is an afterthought, or he withheld it in the hope of tactical advantage. In either event it is not now open to the defendant to attack the instructions. *Commonwealth* v. *Underwood,* 358 Mass. 506, 509, n. 2 (1970), and cases cited.

*Judgment affirmed.*