COMMONWEALTH *vs.* DIANE KING
(and six companion cases[1]).

Suffolk. February 7, 1977. — December 12, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Prostitution. Common Night Walker. Constitutional Law*, Privacy,
Equal protection of laws. *Due Process of Law*, Vagueness of statute.
*Words*, "Prostitute," "Common night walker."

The term "prostitute" in G. L. c. 272, § 53, as construed to mean one who
permits common indiscriminate sexual activity for hire, is not uncon-
stitutionally vague. [11-13]
The term "common night walkers" in G. L. c. 272, § 53, as construed to
mean persons abroad at night who solicit others to illicit sexual acts, is
not unconstitutionally vague. [13-14]
General Laws c. 272, § 53, as applied to defendants who, in a public
place, indiscriminately solicited or agreed to perform sexual acts for
hire was not facially unconstitutional as impinging on their right to
privacy. [14]
General Laws c. 272, § 53, applies to both male and female prostitutes,
and, as so construed, does not violate the equal protection provisions
of the Massachusetts Constitution. [15-17]
Defendants who were charged with prostitution under G. L. c. 272, § 53,
were not denied equal protection of the laws by the fact that their male
customers were not also liable for punishment under the statute. [17-
19]
The failure of law enforcement officials to prosecute the male customers
of prostitutes did not constitute discriminatory enforcement of the pro-
visions of G. L. c. 272, § 53, on the basis of sex. [19-22]
There was nothing in the records of the trials of two female defendants for
violations of G. L. c. 272, § 53, to support their claim of unlawful
discrimination in the consistent failure of police to prosecute male
prostitutes. [18]
At the trial of a female defendant for prostitution under the provisions of
G. L. c. 272, § 53, dismissal of the complaint on the ground that the
defendant was denied equal protection of the laws was not required by

[1] Of the companion cases four are against Diane King, one is against
Barbara Astrofsky, and one is against Rebecca Jones.

evidence that the arresting officer had never arrested a male prostitute and his testimony that it was the policy of the vice squad to arrest only female prostitutes where the defendant failed to establish that other criminal statutes were not employed to punish male conduct equivalent to prostitution. [18-19]

A female charged with prostitution or night walking under G. L. c. 272, § 53, would be entitled to a dismissal of the charges on an appropriate showing that the police department or prosecutor's office followed an unjustifiable policy of selective enforcement against female prostitutes and not male prostitutes. [22]

COMPLAINTS received and sworn to in the Municipal Court of the City of Boston on April 2, 1975, May 28, 1975, June 21, 1975, July 18, 1975, July 23, 1975, and November 14, 1975.

On appeal to the Superior Court, the cases were heard by *Steele*, J., a District Court judge sitting under statutory authority.

COMPLAINT received and sworn to in the Municipal Court of the Roxbury District on July 19, 1977.

On appeal to the Superior Court, the case was heard by *Morrissey*, J., a judge of the Municipal Court of the City of Boston sitting under statutory authority.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Lawrence D. Shubow* (*Kathleen M. Allen & Joan C. Schmidt* with him) for the defendants.

*Andrew P. Hier*, Assistant District Attorney (*George E. Foote, Jr.*, Special Assistant District Attorney, with him) for the Commonwealth.

*David Rossman*, for Boston University Student Defender Program, amicus curiae, submitted a brief.

HENNESSEY, C.J.   We have before us a broad scale attack on the Massachusetts law against prostitution. The defendants, Rebecca Jones, Barbara Astrofsky, and Diane King, all were convicted for violations of G. L. c. 272, § 53. Jones and Astrofsky were convicted in a Municipal Court, appealed, and then were tried and convicted by a judge in the

Superior Court on complaints of prostitution. King, after appealing her Municipal Court convictions, was tried and convicted by judges in the Superior Court on three complaints of prostitution and two complaints of common night walking, all pursuant to § 53. Fines and thirty-day suspended sentences, with periods of probation, were imposed in all cases except one case against King, wherein a six-month sentence was imposed.

In each of the seven cases below, before conviction in the Superior Court, the defendant filed motions to dismiss the complaint and for the entry of a finding of not guilty on the complaint, alleging that c. 272, § 53, is unconstitutional on its face and as applied to the defendant in that case. The judge in each case denied both motions, and the defendant in each case took exceptions to the denial of her motions. Because the motions and exceptions in all the cases raise common issues, the defendants consolidated their cases for the purposes of appeal.[2] This court took jurisdiction of the consolidated appeal which is before us on bills of exceptions. Execution of the defendants' sentences was stayed pending appeal. We find no error and overrule the exceptions in all cases.

The facts underlying each conviction can be summarized as follows.

*Jones.*

In July, 1975, Officer McNelley of the Boston police department telephoned Jones, informing her that he had obtained her name from a male friend. When she said she could not remember this person, they arranged an appointment for the same afternoon. At that meeting, Jones informed Officer McNelley that she would perform various sexual acts with him for $50. He then arrested her and filed a complaint that "Rebecca Jones . . ., a female, was a prostitute offering her body to indiscriminate intercourse with men for hire." Officer McNelley testified that he has never

---

[2] In addition, this court has before it a brief of amicus curiae, Boston University Student Defender Program.

brought a similar complaint against a man and that it is the practice of the vice squad division of the Boston police department to file such complaints against only females.

*Astrofsky.*

In November, 1975, Officer Flemming of the Boston police department observed Astrofsky with another woman in a hotel bar being approached by men. He engaged them in conversation. According to his testimony, her companion asked him, in Astrofsky's absence, whether he "was interested in going out for $75.00 each." She informed Astrofsky of his interest in "going out" for this price, and Astrofsky volunteered the information that fellatio and sexual intercourse would be included. Officer Flemming then arrested both women. He filed a complaint that "Barbara Astrofsky . . . [b]eing a female, was a prostitute offering her body to indiscriminate intercourse with men for hire."

*King* — Cases 1, 2 and 3 (prostitution).

In April, 1975, according to the testimony of Officer Milan of the vice control unit of the Boston police department, he observed King conversing with the operator of a motor vehicle. She entered the car; it drove away. Then he and a fellow officer stopped the car. The operator of the car informed the officers that King had solicited him for sexual intercourse for $20 and that the act was to take place in his car.[3] Thereupon the officers arrested King and filed a complaint that "Diane King . . ., being a female, was a prostitute offering her body to indiscriminate intercourse with men for hire." The record does not show whether the officers also arrested the operator of the car.

In May, 1975, Detective DeLuca of the Boston police department was approached by one Debbie Wilson, who offered to engage in fellatio and sexual intercourse for $25. After he agreed to Wilson's terms, King approached the couple and offered, for an additional $25, to join Wilson in

---

[3] No objection was made in this case or case No. 3, at trial or on appeal, to the prosecutor's use of what appears to be hearsay evidence to convict King.

performing sexual acts with Detective DeLuca. He then arrested both women and filed a complaint that "Diane King . . ., being a female, was a prostitute offering her body to indiscriminate intercourse with men for hire."

In July, 1975, Detective McCormick of the Boston police department observed King getting into a car, followed the car, and stopped it. The male occupant of the car informed Detective McCormick that King had offered to perform sexual intercourse with him for $25, and that they were en route to her apartment. Detective McCormick then arrested King and filed a complaint charging her with prostitution in language identical to Detective DeLuca's. The record does not show whether Detective McCormick also arrested the male occupant of the car.

*King* — Cases 4 and 5 (common night walking).

On July 13, 1975, at approximately 11:30 P.M. Patrolman Fee of the Boston police department observed King on a Boston street corner approaching and conversing with males who were on foot and in cars. He ordered her to stop this activity and she complied. On two subsequent nights he observed King engaging in similar activity. On the first such occasion he ordered her to leave the area. On the second such occasion he arrested her and filed a complaint that "Dianne [sic] King . . . was and now is a common night walker." After this arrest, Patrolman Fee in King's presence conversed with an unidentified male who informed him that King had asked whether he wanted to go out and whether he could spend $20.

On June 9, 1975, at 3 A.M. Detective Powers of the Boston police department observed King on a Boston street corner approaching cars with male occupants. He warned her to leave the area and she complied. On June 21, 1975, at 3:55 A.M. Detective Powers observed King entering a car, stopped the car and told her to leave the area. At 4:35 A.M. he observed her at the same location, entering a car. He followed the car to Atlantic Avenue in Boston, where the driver parked the car. Detective Powers arrested King,

charging her with common night walking in language identical to Patrolman Fee's.

1. The defendants assert that G. L. c. 272, § 53, in so far as it prohibits prostitution is facially unconstitutional because its definition of proscribed conduct is vague; because it prohibits the status of being a prostitute; because it discriminates against women; and because the statute proscribes conduct which is protected by the right of privacy. In addition, they argue that the § 53 proscription of prostitution was unconstitutionally applied in each of the five cases below because § 53 is enforced against female prostitutes but not against male prostitutes; because § 53 is enforced against female prostitutes but not against their male customers; because the Commonwealth failed to prove the necessary elements of the offense of prostitution in these cases; and because application of § 53 in these cases invaded the defendant's rights to privacy. Finally, the defendants maintain that § 53, in so far as it prohibits common night walking, is unconstitutionally vague as applied to King.[4]

We hold that the prostitution provision of G. L. c. 272, § 53, as construed in this opinion, is not facially unconstitutional. In addition, we hold that the records do not show unconstitutional application of that provision to the defendants. We also hold that the common night walking provision of § 53 was not unconstitutionally vague in its application to King. Finally, we hold that the Commonwealth here proved the essential elements of the charge of prostitution, since proof of *solicitation* by the defendants for such acts is sufficient.

---

[4] General Laws c. 272, § 53, as amended through St. 1973, c. 1073, § 20, reads as follows, in its entirety: "Common night walkers, both male and female, common railers and brawlers, persons who with offensive and disorderly act or language accost or annoy persons of the opposite sex, lewd, wanton and lascivious persons in speech or behavior, idle and disorderly persons, prostitutes, disturbers of the peace, keepers of noisy and disorderly houses and persons guilty of indecent exposure may be punished by imprisonment in a jail or house of correction for not more than six months, or by a fine of not more than two hundred dollars, or by both such fine and imprisonment."

2. CONSTITUTIONALITY — DUE PROCESS — VAGUENESS.

The defendants contend that the terms "prostitutes" and "common night walkers" in § 53 are so vague as to violate the constitutional principle of due process of law in that these terms fail to give sufficient warning and definition of the proscribed conduct.

*Prostitutes.*

General Laws c. 272, § 53, provides in pertinent part: "[P]rostitutes . . . may be punished by imprisonment in a jail or house of correction for not more than six months, or by a fine of not more than two hundred dollars, or by both such fine and imprisonment." In 1959, the Legislature inserted the term "prostitutes" into the list of criminal offenses contained in § 53 without specifically defining the persons who may be punished as "prostitutes" under § 53. St. 1959, c. 304, § 1. At the same time the Legislature inserted into the list of permissible forms of complaints and indictments contained in G. L. c. 277, § 79, a form for the § 53 crime of prostitution which reads "[t]hat A.B. a female, was a prostitute offering her body to indiscriminate intercourse with men for hire." St. 1959, c. 304, § 2.

The defendants argue that the Legislature's failure to define the conduct proscribed in its 1959 amendment to § 53 renders that provision unconstitutionally vague because potential defendants have insufficient warning of the criminality of their conduct. Cf. *Commonwealth* v. *A Juvenile,* 368 Mass. 580, 586 (1975). We do not agree.

Although no crime of prostitution by that name exists at common law (*Commonwealth* v. *Cook,* 12 Met. 93, 97 [1846]), it can also be said that the Legislature did not create or define a new crime, "prostitution," by enacting St. 1959, c. 304, § 1. General Laws c. 272, § 53, does not create or define new crimes, but rather prescribes penalties for the commission of acts previously recognized as criminal offenses. *Commonwealth* v. *Brasher,* 359 Mass. 550, 554 (1971). The statute drew together for reclassification purposes criminal acts of the same essential nature (commercial

sex) so that law enforcement officials could focus efficiently on this type of criminal conduct.[5] These reclassified acts had been proscribed for more than 250 years by the statute punishing "lewd, wanton and lascivious persons in speech or behavior." See, e.g., Province Laws 1699-1700, c. 8, § 2; G. L. c. 272, § 53, as amended; G. L. c. (Ter. Ed.) c. 272, § 53, as amended; *Commonwealth* v. *Diamond,* 248 Mass. 511, 517 (1924) (solicitation to and performance of lewd acts for money constitute being a lewd, wanton, and lascivious person in speech or behavior).

Since the Legislature failed to define the lewd, wanton, and lascivious speech and behavior it reclassified as prostitution, we turn to common understanding for definition of the conduct reclassified in St. 1959, c. 304, § 1. See *Thomes* v. *Commonwealth,* 355 Mass. 203, 207 (1969); *Alegata* v. *Commonwealth,* 353 Mass. 287, 304 (1967).

That understanding, as clearly stated by this court in construing other statutes, is that a prostitute is one who permits common indiscriminate sexual activity for hire, in distinction from sexual activity confined exclusively to one person. See *Commonwealth* v. *Cook,* 12 Met. 93, 97 (1846); *Commonwealth* v. *Harrington,* 3 Pick. 26 (1825). We conclude that that is the conduct intended to be punished by § 53.[6]

---

[5]Several rational explanations for the suppression of commercialized sexual activity are commonly expounded. First, its business aspects breed criminal organizations which do not confine their activities to the sale of sexual activities, but branch into other areas of crime, often violent ones. Second, the business creates both the necessity and the means for corrupting law enforcement officials. Third, it provides an incentive for exploitation of (and coercion of) women, particularly young and uneducated women who require protection of their interests. Fourth, commercialized sex involves a substantial volume of sexual activity by each prostitute, so that the spread of venereal disease is promoted. See discussion in Model Penal Code § 207.12, Comment (Tent. Draft No. 9, 1959) at 175-176. While the defendants argue that these problems can be eliminated by decriminalization and regulation of the sex for hire business, such arguments must be directed to the legislative branch of our government.

[6]Section 251.2 of the Model Penal Code (Proposed Official Draft 1962) is also indicative of widespread understanding substantially consistent with the above definition. We need not consider at this time whether we

Thus defined, § 53 is not vague. Moreover, this definition includes conduct which persons of ordinary understanding would classify as prostitution. As the defendants themselves point out, conduct known as prostitution has existed since time immemorial. This conduct traditionally has included both performance of sexual acts as a business and public solicitation for such business. See *Cook, supra* at 97. The conduct for which the defendants were convicted as prostitutes falls squarely within this traditional understanding of the terms "prostitute" and "prostitution." Therefore they cannot successfully maintain that the prostitution provision of § 53 is unconstitutionally vague on its face without judicial clarification of the conduct it punishes. See *Commonwealth* v. *Orlando,* 371 Mass. 732, 734 (1977); *Coates* v. *Cincinnati,* 402 U.S. 611, 614 (1971).

*Common Night Walkers.*

The defendants maintain that King's convictions of common night walking pursuant to G. L. c. 272, § 53, violate the due process provisions of the United States Constitution and the Massachusetts Constitution, by reason of the vagueness of the statutory language. This court has construed the common night walking provision of § 53 as punishing persons abroad at night who solicit others to illicit sexual acts. *Thomes* v. *Commonwealth,* 355 Mass. 203, 206-207 (1969). We held in *Thomes* that, as thus construed, the common night walker provision of § 53 is not unduly vague. We now reaffirm that holding.

---

accept all the Code's wording in § 251.2 as the law of the Commonwealth. That wording is as follows: "(1) *Prostitution.* A person is guilty of prostitution . . . if he or she: (a) is an inmate of a house of prostitution or otherwise engages in sexual activity as a business; or (b) loiters in or within view of any public place for the purpose of being hired to engage in sexual activity. 'Sexual activity' includes homosexual and other deviate sexual relations. A 'house of prostitution' is any place where prostitution or promotion of prostitution is regularly carried on by one person under the control, management or supervision of another. An 'inmate' is a person who engages in prostitution in or through the agency of a house of prostitution. 'Public place' means any place to which the public or any substantial group thereof has access."

King was convicted twice of common night walking on evidence in each case that police officers observed her on numerous occasions late at night, within the space of several weeks, in the same general vicinity, approaching and conversing with men. The arrest in each case occurred after she had on earlier occasions been ordered to leave the area.[7] We conclude that this evidence was sufficient to sustain her convictions of common night walking. The time, place, and frequency of King's conduct warrant an inference that on each occasion observed by the police King was soliciting men for illicit sexual intercourse. Section 53 is not a statute directed against recidivism and does not require proof of past convictions for prostitution to sustain a conviction for common night walking.

3. CONSTITUTIONALITY — RIGHT OF PRIVACY.

Our definition of prostitution comprises two grounds for conviction under § 53: performance of indiscriminate sexual acts for hire and indiscriminate solicitation or agreement to perform sexual acts for hire. The defendants' convictions for prostitution clearly rested on the latter ground. Evidence at trial indicated that, while in a place to which the public had access, the defendants either offered or agreed to perform various sexual acts with other persons in exchange for money. Therefore, their convictions, relying on no private conduct, implicate no constitutionally protected rights of privacy. Although a conviction for prostitution based on performance of sexual acts for hire conceivably could rely on conduct performed in private, we do not decide whether such a conviction would implicate a right of privacy. Defendants may not properly base their claim that § 53 is facially unconstitutional on its possible unconstitutionality as applied to others. *Commonwealth* v. *Balthazar*, 366 Mass. 298, 302 (1974). *Commonwealth* v. *LaBella*, 364 Mass. 550, 553-554 (1974).

---

[7] After one arrest King's client apparently informed the arresting officer that King had solicited him for sex for hire. The other arrest had no evidence corroborating the solicitation aspect of this offense.

4. CONSTITUTIONALITY — EQUAL PROTECTION OF THE LAWS.

The defendants raise the constitutional issue of equal protection of the laws in three aspects. The first two of these aspects go to the alleged facial unconstitutionality of § 53 in that that statute assertedly provides for punishment of female prostitutes but not male prostitutes, and also makes no provision for punishment of the hirer or customer of the prostitute. The third argument is that the statute was unconstitutionally applied against these defendants by reason of discriminatory enforcement of law.

*Male and Female Prostitutes.*

Prostitution as defined in this opinion comprises conduct of all persons, male and female, who engage in sexual activity as a business. Thus, G. L. c. 272, § 53, as construed, applies to male prostitutes as well as to female prostitutes. It is argued by the defendants that a contrary construction of § 53 would violate the equal protection provisions of the Massachusetts Constitution as well as the recent amendment thereto which expressly provides that equality under the law shall not be denied on the basis of sex.[8] Where possible, we construe statutes in such a way that they are constitutional. *Alegata* v. *Commonwealth,* 353 Mass. 287, 290 (1967).[9] The definition of prostitution herein adopted

---

[8] Article 106 of the Amendments to the Constitution of the Commonwealth adopted by referendum in November, 1976, amending art. 1 of the Declaration of Rights.

[9] For these reasons, we also construe the language, in § 53, "prostitutes . . . may be punished," as prescribing penalties for persons who commit acts of prostitution rather than for persons with the status of prostitute, because the latter construction would render the provision unconstitutional. Cf. *Commonwealth* v. *Jarrett,* 359 Mass. 491, 498 (1971) (construing the "disturbers of the peace" provision of § 53 as prohibiting defined conduct); *Commonwealth* v. *Brasher,* 359 Mass. 550, 555 (1971) (construing the "stubborn child" provision of § 53 as prohibiting defined acts of disobedience by a minor); *Alegata, supra* at 295 (striking the vagrancy provision of c. 272, § 66, which "seeks to punish a person because of his status"); *id.* at 302-304 (construing the "idle and disorderly person" language in § 53 as prescribing penalties for various acts constituting disorderly conduct).

avoids any possibility of unnecessary unconstitutionality. In light of our construction of the statute, we need not consider the further argument of the Commonwealth that, even if the prostitution provision were held to apply only to women, it would not be considered discriminatory since there are other crimes which in essence charge males with the same offense under different wording: e.g., unnatural and lascivious acts under G. L. c. 272, § 35, and the common law crime of soliciting for an unnatural act.

*The "Hirer" or "Customer."*

The definition of prostitution set forth, *supra*, does not include the conduct of persons who hire or seek to hire another to engage in sexual activity. Nonetheless we do not agree with the defendants' argument that such a definition of prostitution unconstitutionally criminalizes female conduct but not male conduct.

We note at the outset that the person challenging the constitutionality of a legislative enactment has an onerous burden of proof in establishing the invalidity of the statute. *Commonwealth* v. *Chamberlain,* 343 Mass. 49, 51 (1961). This court will afford a presumption of constitutionality to the statute, which means that all rational inferences are made in favor of the legislation. *Commonwealth* v. *Henry's Drywall Co.,* 366 Mass. 539, 541 (1974).

Applying these principles to § 53, in the face of a claim that it violates the defendants' constitutional right to equal protection of the laws, we may properly consider that § 53 was designed to attack merely one phase of a problem. "The legislature may select one phase of one field and apply a remedy there, neglecting the others." *Williamson* v. *Lee Optical of Okla., Inc.,* 348 U.S. 483, 489 (1955). In somewhat analogous statutes, the Legislature has provided criminal penalties for the provider or seller, and not the customer or buyer, of obscene materials (G. L. c. 272, §§ 28, 29) and for the seller of goods, and not the buyer, in cases where the "Sunday law" is violated. G. L. c. 136, § 5.[10]

---

[10] We have established that § 53 applies to prostitutes of both sexes (see discussion *Male and Female Prostitutes, supra*) and therefore strict

In light of our conclusions, we need not consider the further argument that might be offered by the Commonwealth that a correlative crime, "lewd, wanton and lascivious . . . speech or behavior," is also provided in § 53; that this crime may apply to those who purchase and attempt to purchase sexual acts, and that thus the statute covers all participants in the business of sex for hire without regard to their status as seller or buyer. See *Commonwealth* v. *O'Brien*, 179 Mass. 533 (1901).

*Discriminatory Enforcement.*

The defendants argue that the prostitution provision of G. L. c. 272, § 53, even if facially constitutional, is unconstitutional as applied to each of the seven cases involved in this appeal. They aver that the Commonwealth selectively enforces § 53 on the basis of sex, in violation of the equal protection provisions of the United States Constitution and the Massachusetts Constitution.

The defendants allege that there existed at the times of their arrests law enforcement policies and practices whereby female prostitutes were prosecuted under § 53 while male prostitutes and male customers of prostitutes were not. In so far as their claim is that of sex-based practices in the failure of authorities to prosecute male customers of prostitutes, their contention fails because they presented no evidence to show that their customers were not arrested and prosecuted. As to this issue, the record is left conjectural. Further, it is the opinion of a majority of the court (see the separate opinion of Hennessey, C.J., *post*) that, to the extent that the defendants rely on the failure to arrest and prosecute customers, what we have said *supra*, concerning the legislative privilege to criminalize the con-

---

scrutiny is not applied by reason of a classification based on sex. See discussion, *infra*, of art. 106 of the Amendments to the Constitution of the Commonwealth, the so called "equal rights amendment." The argument that discrimination exists because most prostitutes are women, and most customers are men, is not convincing, just as it would not be convincing if offered by male defendants accused of certain crimes of violence, the great majority of which are committed by men.

duct of the prostitute and not the customer, is dispositive. It cannot be fairly argued that there is discriminatory enforcement when there is no statutory provision for the prosecution of the customers.

In so far as the defendants King and Astrofsky alleged unlawful discrimination in the consistent failure of police to prosecute male prostitutes their argument fails because they presented no supporting evidence in the trial court. They included in their appellate briefs statistical evidence which would tend to be supportive. However, we can decide cases only on the records before us, so this evidence is not properly to be considered. Such evidence should have been presented at the trial level together with the defendants' motions to dismiss their complaints because of unequal application of § 53 on the basis of sex. Consequently, we find on the records before us that any inference of sex-based practices in the enforcement of § 53, as applied to King and Astrofsky, can rest only on conjecture. The motions to dismiss their complaints were properly denied.

The defendant Jones, unlike King and Astrofsky, attempted to prove discrimination by the presentation of evidence. Thus, at the trial of Jones, the arresting officer testified that he had never arrested a male prostitute and that it was the policy of the Boston police department vice squad to arrest only female prostitutes.

It is argued that, although Officer McNelley does not speak for the police department, it should be inferred from his evidence that the Boston police department follows a practice of enforcing the prostitution provision of § 53 only against women. Even if that premise is accepted, however, it falls far short of establishing any evidence of a denial of equal protection since other criminal statutes may be employed to punish male conduct equivalent to female prostitution. *State* v. *Price*, 237 N.W.2d 813, 815 (Iowa 1976). It is left entirely conjectural in the record before us whether males who solicited for or engaged in sexual relations for hire, but were not arrested for prostitution, were charged instead with any number of other applicable criminal offen-

ses including: common night walking under G. L. c. 272, § 53; the common law crime of soliciting for an unnatural act, see *Commonwealth* v. *Scagliotti*, 373 Mass. 626 (1977); sodomy under G. L. c. 272, § 34; and unnatural and lascivious acts under G. L. c. 272, § 35. It is clear that Jones's motion to dismiss the complaint against her was rightly denied.

*The "Equal Rights" Amendment.*

What we have said thus far leads us to conclude that we shall affirm the judgments in all cases. In doing so we have established that the statutory provisions of G. L. c. 272, § 53, relevant to these cases are facially constitutional. We have also held that the defendants fail, by reason of our present statutory framework, to prove sex-based discrimination in the alleged failure to prosecute customers as well as prostitutes. However, in disposing of the defendants' further contention that the statute was unconstitutionally and discriminatorily applied against women by reason of the police failure to prosecute male prostitutes, we concluded only that the record before us clearly does not raise a sufficient factual basis to support that argument. Thus, we believe that further comment is desirable as to this aspect of the case.

We conclude that a female charged with prostitution or night walking would be entitled to a dismissal of the charges with prejudice on an appropriate showing that the police department or the prosecutor's office followed an unjustifiable policy of selective enforcement against female prostitutes and not male prostitutes.[11]

It is important to note at the outset that there is a considerable area of discretion in prosecutors which permits the exercise of some selectivity for valid reasons consistent with the public interest (e.g., prosecution is forgone in the interest of gaining a cooperative witness). We have no inten-

---

[11] Note, however, *supra,* that prosecution of male prostitutes need not charge prostitution, but may charge related crimes.

tion of suggesting a narrowing of that area of valid prosecutorial discretion.

It is well established that the Fourteenth Amendment to the United States Constitution does not permit unequal application of impartial laws, *Yick Wo* v. *Hopkins*, 118 U.S. 356, 373-374 (1886), but does permit the "conscious exercise of some selectivity" in criminal law enforcement as long as the selectivity is not based on "an unjustifiable standard such as race, religion, or other arbitrary classification." *Oyler* v. *Boles*, 368 U.S. 448, 456 (1962). Following these principles, courts have reversed criminal convictions and dismissed criminal complaints as violative of equal protection principles when they found selectivity in prosecution based on impermissible standards. See, e.g., *United States* v. *Falk*, 479 F.2d 616 (7th Cir. 1973) (selective enforcement of failure to possess a selective service registration card law against vocal draft resisters based on exercise of right of free speech); *United States* v. *Steele*, 461 F.2d 1148 (9th Cir. 1972) (selective enforcement of census form statute against census resisters who exercised right of free speech); *United States* v. *Crowthers*, 456 F.2d 1074 (4th Cir. 1972) (selective enforcement of Federal regulations concerning disturbance against war resisters on the basis of political opinions); *United States* v. *Robinson*, 311 F. Supp. 1063 (W.D. Mo. 1969) (selective enforcement of wiretap law against private offenders but not against governmental offenders); *People* v. *Acme Mkts. Inc.*, 37 N.Y.2d 326 (1975) (selective enforcement of Sunday sales law against stores only on labor union complaints).

The Massachusetts Constitution, as it existed at the time of the defendants' trials, did not permit the Commonwealth to make distinctions based on sex unless the distinctions bore a fair and substantial relationship to a permissible State objective. *Commonwealth* v. *MacKenzie*, 368 Mass. 613, 615-616 (1975). This equal protection standard applies to the cases at hand. However, in 1976 the people of Massachusetts amended art. 1 of their Constitution, declaring that "[e]quality under the law shall not be denied or abridged

because of sex, race, color, creed or national origin." See art. 106 of the Amendments to the Constitution of the Commonwealth. Since the standards which derive from this amendment currently apply to cases involving sex-based classification, we herein elaborate those standards.

The classifications set forth in art. 106, *supra*, with the exception of sex, are within the extensive protection of the Fourteenth Amendment to the United States Constitution and are subjected to the strictest judicial scrutiny. See, e.g., *Loving* v. *Virginia*, 388 U.S. 1 (1967) (race as a suspect classification); *Graham* v. *Richardson*, 403 U.S. 365 (1971) (alienage as a suspect classification); *Oyama* v. *California*, 332 U.S. 633 (1948) (national origin as a suspect classification); *Wisconsin* v. *Yoder*, 406 U.S. 205, 214 (1972) (religious distinction affecting fundamental First Amendment rights). These classifications are permissible only if they further a demonstrably compelling interest and limit their impact as narrowly as possible consistent with their legitimate purpose. See, e.g., *Commonwealth* v. *Henry's Drywall Co.*, 366 Mass. 539, 542 (1974); *In re Griffiths*, 413 U.S. 717, 721-722 (1973).

Article 106 incorporates into our State Constitution an express prohibition of discrimination on the basis of sex, grouping it with other prohibited bases for discrimination which are subject to strict judicial scrutiny. All the categorical bases listed therein logically are subject to the same degree of judicial scrutiny, and in our opinion that degree of scrutiny must be at least as strict as the scrutiny required by the Fourteenth Amendment for racial classifications. Therefore, we conclude that the people of Massachusetts view sex discrimination with the same vigorous disapproval as they view racial, ethnic, and religious discrimination.[12]

---

[12] The judicial scrutiny given to classifications based on race and national origin has demonstrated that, in effect, such discrimination is absolutely prohibited. Only in one case has the United States Supreme Court found a compelling State interest which was held to justify such discrimination. *Korematsu* v. *United States*, 323 U.S. 214, 219 (1945). See *Loving, supra* at 11.

Consequently, the Commonwealth cannot enforce G. L. c. 272, § 53, against female prostitutes but not against male prostitutes unless it can demonstrate a compelling interest which requires such a policy.

The defendant bears the initial burden of alleging and showing, prima facie, selective enforcement of the law on the basis of sex, because we presume that criminal arrests and prosecutions are undertaken in good faith, without intent to discriminate. See *Manning* v. *Municipal Court of the Roxbury Dist.,* 372 Mass. 315 (1977); *Falk, supra* at 620. Law enforcement officials necessarily have wide discretion in determining whether to prosecute. 372 Mass. at 317. A defendant can meet this burden by presenting to the court, on a motion to dismiss, evidence which strongly suggests or raises a reasonable inference that there existed in connection with her arrest or prosecution a sex-based distinction in law enforcement practice in the consistent and unjustified failure to prosecute male prostitutes. See *Falk, supra* at 622-623; *United States* v. *Crowthers,* 456 F.2d 1074 (4th Cir. 1972); *United States* v. *Robinson,* 311 F. Supp. 1063, 1064 (W.D. Mo. 1969). Cf. *Commonwealth* v. *Antobenedetto,* 366 Mass. 51, 57 (1974) (defendant having shown that evidence was seized pursuant to allegedly unjustifiable search, prosecution has burden of establishing reasonableness of search).

Once a defendant has raised a reasonable inference that sex-based law enforcement practices are implicated in her arrest or prosecution, the Commonwealth must rebut that inference or suffer the underlying complaint to be dismissed.

5. CONCLUSION.

In summary, we find no error in King's convictions for prostitution and common night walking, and we find no error in the convictions of Astrofsky and Jones for prostitution.

*Exceptions overruled.*

HENNESSEY, C.J. (concurring). I concur in the main opinion, of course, including its basic discussion of the

"equal rights" amendment. That part of the main opinion is dictum, since the defendants' argument that the complaints against them should be dismissed because of unconstitutional sex-based discrimination failed for lack of evidence of such discrimination. However, dictum though it may be, I would broaden it to a recognition of the validity of the defendants' argument that unlawful discrimination in enforcement can be proved by a showing that the police department or prosecutor's office followed an unjustifiable policy of prosecuting prostitutes and not their customers. See *State* v. *Johnson,* 74 Wis. 2d 169 (1976). This policy in turn may be shown to be sex-based discrimination (and thus subject to strict scrutiny) by a showing that most prostitutes are women and most customers are males.

The majority recognize the possibility of discrimination in the enforcement of the anti-prostitution law against female prostitutes and not against male prostitutes, but conclude that there is no statute which explicitly provides for the prosecution of the prostitutes' customers, and that therefore no such discriminatory enforcement can be shown.[1] I suggest that there are correlative crimes which in many cases may be applicable to the customer's conduct.

It seems clear to me that in some cases the very evidence which serves to support a guilty finding against the female prostitute inevitably shows criminal involvement of her male customer, although in other cases of mere solicitation there may not be sufficient evidence to warrant a criminal conviction of the man. One of the most likely statutes under which the male customer might be prosecuted is the provision in c. 272, § 53, which punishes "lewd, wanton and lascivious persons in speech or behavior." See *Commonwealth* v. *O'Brien,* 179 Mass. 533 (1901).[2]

---

[1] The majority holding decides the issue as to the customers on the additional ground that no evidence of such discrimination was introduced in these cases. On that additional ground, I concur that the motions to dismiss were rightly denied.

[2] I express no opinion as to the type of evidence which would serve as a minimum to support a conviction under this portion of the statute.

Other statutes, e.g., proscribing adultery, fornication, and unnatural acts, may be applicable for prosecution of the customer. It can be argued

It is my view that a female defendant might in some cases meet the burden of establishing proof of discriminatory enforcement by showing, for example, that the arresting officer, for no valid reason, released without arrest her known male customer in circumstances which tended to show that the man was criminally involved. The Commonwealth might well rebut such an inference by showing, for example, that the known male customer of a prostitute died or disappeared, or that there was insufficient evidence by way of his speech or conduct to warrant his arrest. In appropriate circumstances it might well be sufficient for the Commonwealth to show that the customer was arrested but was not prosecuted for reasons lying within traditional prosecutorial discretion.

In short, I would hold that, even though the Legislature has made no express provision for the prosecution of the customers of prostitutes, the existence of correlative statutory crimes, applicable to male customers in some circumstances, may give support to a charge of unconstitutional discrimination against the female prostitute entitling her to dismissal of the complaints against her. If a police custom exists of invariably, and regardless of the circumstances, sending the male customer on his way while at the same time escorting the accused female prostitute into the police car or patrol wagon, this in my view departs from the purpose of the equal rights amendment, and may not even conform to the expressed legislative intention to control prostitution through the processes of the criminal law.

---

that *Commonwealth* v. *Balthazar,* 366 Mass. 298 (1974), has a limiting effect on such prosecutions, but it can also be argued that, since both prostitute and customer are involved in commercial sex, the principles of *Balthazar,* if applicable to prosecutions of customers, are equally applicable to prosecutions of prostitutes.