JOHN T. TODD *vs.* COMMISSIONER OF CORRECTION & others.[1]

No. 98-P-2007.

Suffolk. March 16, 2001. - February 25, 2002.

Present: GREENBERG, BECK, & DUFFLY, JJ.

*Constitutional Law,* Equal protection of laws. *Due Process of Law,* Prison disciplinary proceedings, Prison regulation, Vagueness of regulation. *Imprisonment,* Department disciplinary unit. *Commissioner of Correction.*

In an action brought by an inmate at a correctional facility seeking to challenge regulations of the Department of Corrections (department) governing confinement in the department disciplinary unit, 103 Code Mass. Regs. §§ 430.09(2) and 430.25(3)(d), a Superior Court judge correctly granted summary judgment in favor of the department on the plaintiff's due process claims, where the regulatory scheme and uncontroverted evidence set forth sufficient standards to prevent the arbitrary and capricious application of the regulations by prison officials [34-37]; however, the department was not entitled to summary judgment on the plaintiff's equal protection claims, where the department, as the moving party, failed to offer sufficient materials indicating why the regulations, which were facially neutral, applied only to male prisoners [37-40].

CIVIL ACTION commenced in the Superior Court Department on October 27, 1997.

A motion to dismiss was heard by *Barbara J. Rouse,* J.

*John T. Todd,* pro se.

*Joel J. Berner* for Commissioner of Correction.

GREENBERG, J. Underlying this dispute are certain regulations, specifically 103 Code Mass. Regs. §§ 430.09(2) and 430.25(3)(d) (1993), promulgated by the defendant Department of Correction, which established the department disciplinary unit

---

[1]Larry E. DuBois is named individually and in his capacity as Commissioner of Correction. The other defendants are Michael T. Maloney and Kathleen Dennehy, individually and in their capacities as deputy commissioners, and the Department of Correction.

(DDU).[2] We shall refer to all defendants collectively as the "department" for convenience of reference.

On January 23, 1992, the department published a memorandum introducing the regulations at issue. Pertinent portions of the memorandum are reprinted in the margin.[3] The uncontroverted facts show that the regulations apply to all prisoners at "all correctional institutions within the Department of Correc-

---

[2]Pertinent regulations read as follows:

*"430.09: Responsibilities of the Disciplinary Officer*

"(2) If the disciplinary officer decides to proceed with formal disciplinary action, he shall, within two weekdays from the conclusion of the review, designate the offense as minor or major and may revise or supplement the disciplinary report. In cases where the disciplinary officer determines that a sentence to a Department Disciplinary Unit may be warranted, he shall forward a copy of the disciplinary report to the Commissioner's Special Hearing Officer.

. . .

*"430.25: Sanctions*

"(3) Major sanctions include:

(a) Isolation, for a specified period of time not to exceed 15 days for one offense, and no more than 30 days for all violations arising out of one incident.

(b) Recommended good time forfeiture.

(c) All minor sanctions.

(d) Sentence to a Department Disciplinary Unit for a period not exceeding ten years. An inmate shall be credited for time served on a monthly basis except when an inmate fails to attend his monthly review or is found guilty of a disciplinary offense."

[3]The applicable part of the memorandum states: "Please be advised that as of today, January 23, 1992, the Department Disciplinary Unit (DDU) at MCI-Cedar Junction will be available for occupancy . . . . In essence, the DDU will be reserved for those inmates who are deemed to have committed a particularly serious offense or set of offenses. Under the amended procedure, a disciplinary officer refers such an offense or offenses to a special hearing officer appointed by the Commissioner. In the event that the special hearing officer finds the inmate guilty of one or more of these offenses after a hearing, the special hearing officer may, subject to the inmate's appeal to the Commissioner, sentence the inmate to a term of up to ten (10) years in the DDU. A sentence to the DDU is designed to punish and thereby deter serious misbehavior by inmates. . . ."

tion," 103 Code Mass. Regs. § 430.04 (1993), and that, since 1992, the department has enforced the DDU sanctions solely against male prisoners at all custody levels, including some male prisoners who are held at lower security levels than female prisoners.

On July 10, 1995, the plaintiff, John T. Todd, a prisoner with an extensive history of violent behavior while incarcerated at MCI-Walpole and other correctional facilities, commenced a four-year term of confinement in the DDU for writing a threatening letter to a correctional officer. On June 26, 1997, while serving his DDU sentence, Todd spat in the face of a DDU correctional officer. For that infraction, after a hearing before a special hearing officer, he was found guilty and given a one-year "from and after" sentence to the DDU unit. After an unsuccessful pro se appeal to the Commissioner of Correction, Todd brought this pro se action, seeking relief in the nature of certiorari under G. L. c. 249, § 4, and a declaratory judgment under G. L. c. 231A.[4] Attached to his pro se complaint was a copy of the department's memorandum and relevant regulations, as well as a copy of his 1997 disciplinary report, and the records from his original appeal to the Commissioner.

Todd contends that, as applied to him, the departmental regulations governing confinement to the DDU violate the equal protection and due process guarantees of the United States Constitution and the Declaration of Rights of the Massachusetts Constitution. He also claims that the regulations as applied contravene his rights under the Equal Rights Amendment to the Massachusetts Constitution. See art. 106 of the Amendments to the Constitution of the Commonwealth. The department filed a motion to dismiss or, alternatively, for summary judgment. Todd opposed the department's motion and filed an affidavit. A Superior Court judge allowed the department's motion.[5] Todd

---

[4]The plaintiff's claims were appropriately brought under G. L. c. 231A and G. L. c. 249, § 4. *Henderson* v. *Commissioners of Barnstable County*, 49 Mass. App. Ct. 455, 458 (2000).

[5]It is apparent that the motion judge treated the motion under Mass.R.Civ.P. 56, 365 Mass. 824 (1974), and gave the parties a reasonable opportunity to present pertinent materials beyond those encompassed by the complaint. See *Stop & Shop Cos.* v. *Fisher*, 387 Mass. 889, 892 (1983). In particular, the at-

timely moved for reconsideration; that motion was denied on July 30, 1998. On August 10, 1998, Todd appealed.

1. *Due process claim.* We address first Todd's argument that the regulations governing confinement to the DDU, specifically 103 Code Mass. Regs. §§ 430.09(2) and 430.25(3)(d), are unconstitutionally vague and applied in an arbitrary and capricious manner. It is settled that "[a]n inmate is entitled to the protection of procedural due process under the Federal and State Constitutions only if there is an existing liberty or property interest at stake. *Sandin* v. *Conner,* 515 U.S. 472, 484 (1995). *Torres* v. *Commissioner of Correction,* 427 Mass. 611, 617, cert. denied, 525 U.S. 1017 (1998)." *Drayton* v. *Commissioner of Correction,* 52 Mass. App. Ct. 135, 138 (2001).[6]

The decisional law has settled the "fundamental principle that regulations promulgated pursuant to statutory authority have a presumption of constitutionality." *Commonwealth* v. *B & W Transp. Inc.,* 388 Mass. 799, 803 (1983), and cases cited.

tachments to the department's motion contained an affidavit of the defendant Michael T. Maloney who, by 1998, had become the Commissioner of Correction. The affidavit states, among other things, that "a comparable DDU for female inmates has not, and may never be constructed." By adopting the department's position as expressed in its memorandum in support of the motion, the motion judge considered this affidavit and other supplemental material in rendering her decision. See *Brookline* v. *Medical Area Serv. Corp.,* 8 Mass. App. Ct. 243, 245 n.7 (1979) (holding that the motion judge, by not excluding additional materials, treated the motion as one for summary judgment despite the fact that the judgments entered were mislabelled). Furthermore, by his submission of materials outside the complaint and in response to the department's motion, Todd had constructive notice that the motion judge could treat the department's motion as one for summary judgment. See *Stop & Shop,* 387 Mass. at 892. See also *Cousineau* v. *Laramee,* 388 Mass. 859, 860 n.2 (1983).

[6]The plaintiff also claims that he has been denied his substantive due process right to be free from bodily restraint because a lengthy disciplinary sentence to the DDU constitutes an "atypical and significant hardship." *Sandin* v. *Conner,* 515 U.S. 472, 483-487 (1995), sets forth the analysis under which courts determine whether a State law confers a liberty interest on inmates. It does not, however, relate to substantive due process rights. Instead *Sandin* stands for the proposition that where the State has created a liberty interest, inmates are entitled to certain procedural protections. *Id.* at 487. See *Torres* v. *Commissioner of Correction,* 427 Mass. at 618 (concluding that, even if disciplinary confinement to the DDU had been "an atypical and significant hardship," the plaintiffs' procedural due process rights had not been violated). The plaintiff does not allege any procedural deficiencies in his disciplinary hearing.

Regulations are treated by the court with the same deference as statutes. *Massachusetts State Pharmaceutical Assn.* v. *Rate Setting Commn.*, 387 Mass. 122, 127 (1982).

The DDU regulations here place additional restrictions on a prisoner's confinement once it has been determined that he has committed a major offense that warrants transfer to the DDU. Todd concedes that it is within the department's authority to do so, as long as the regulations apply to male and female prisoners alike. He argues, however, that the regulations are unconstitutionally vague because they contain no guidelines for prison officials to use when deciding what offenses could result in a sentence to the DDU. He also argues that the regulations provide no sentencing guidelines to insure that the length of a sentence is commensurate with the offense and the offender's record.

In *Grayned* v. *Rockford*, 408 U.S. 104, 108-109 (1972), the Supreme Court set forth three factors to consider in determining whether regulations, as here, survive the vagueness challenge.[7] *Commonwealth* v. *Gallant*, 373 Mass. 577, 579-580 (1977). We deal with the second factor as it appears to be the only argument put forward by Todd. Specifically, the issue is whether the DDU regulations set forth sufficient standards to prevent their

---

[7]The first factor in the vagueness analysis is not applicable to this case. The plaintiff does not challenge that 103 Code Mass. Regs. § 430.24(18) is inadequately defined and that he was not on notice that the regulation could encompass spitting at an officer. Compare *Commonwealth* v. *Gallant*, 373 Mass. 577, 590 (1977) (term "unnatural sexual intercourse" was not vague as applied to the defendant's act). The plaintiff also does not claim any inconsistency in the regulations regarding the type of punishment available or lack of notice as to the type of punishment that could result from his actions. Compare *Commonwealth* v. *Gagnon*, 387 Mass. 567 (1982) (striking down drug control statute because penalty provisions were facially inconsistent and legislative history was inconclusive). The department's regulation, 103 Code Mass. Regs. § 430.25(3), clearly sets out the range of penalties that could be imposed on an individual who commits a major violation. So long as a regulation clearly defines the conduct prohibited and the punishment authorized, the notice requirements of due process are satisfied. See *United States* v. *Batchelder*, 442 U.S. 114, 123 (1979). The third part of the vagueness test also is not applicable in this case because the plaintiff's claim in no way implicates First Amendment freedoms. Compare *Champagne* v. *Commissioner of Correction*, 395 Mass. 382, 391-393 (1985) (vagueness challenge to prison regulation that allowed superintendent or designee to disapprove of prisoner's receipt of correspondence).

arbitrary and capricious application by prison officials. *Id.* at 580. We conclude that the regulatory scheme contains adequate specificity to rebut Todd's vagueness challenge. Although 103 Code Mass. Regs. §§ 430.09(2) and 430.25(3)(d) do not themselves have standards by which a correctional officer determines whether an infraction warrants a referral to a special hearing officer (SHO) and do not contain sentencing guidelines for the SHO to follow, other relevant regulations furnish these details. Hence, the motion judge was correct in allowing the department's motion as to Todd's due process claim.

A brief summary of the pertinent regulations follows. When a correctional officer believes that a disciplinary offense has been committed, he must write a disciplinary report (D-report) and file it with a shift commander or other person designated by the superintendent. 103 Code Mass. Regs. § 430.08(2) (1993). The shift commander must then investigate the complaint and decide whether to forward the D-report to a disciplinary officer or to handle the matter informally. 103 Code Mass. Regs. § 430.08(3) (1993). At that stage, the disciplinary officer designates the complaint as a major or minor offense. See 103 Code Mass. Regs. § 430.08(1) (1993) (noting that "[i]nformal handling of minor offenses in accordance with existing practices is not precluded or discouraged by [these regulations]"); 103 Code Mass. Regs. § 430.10 (1993) ("Proceedings in Minor Matters"). In those instances where the disciplinary officer decides that a sentence to the DDU may be warranted, he or she forwards a copy of the complaint to an SHO. 103 Code Mass. Regs. § 430.09(2). A certain amount of discretion, similar to that of a prosecutor, is granted to the disciplinary officer in making this decision. 103 Code Mass. Regs. § 430.09(1) (1993). Such a referral is mandatory when there is even a remote possibility that a DDU sanction may be involved. 103 Code Mass. Regs. § 430.09(2). Therefore, although a disciplinary officer has some discretion, once the prospect appears that a DDU sanction may be imposed, he or she must forward the complaint to an SHO. *Ibid.*

After the prisoner learns of the potential for a DDU sanction, a hearing takes place before an SHO, who serves as an adjudicator. 103 Code Mass Reg. § 430.11 (1993). In determin-

ing the prisoner's sanction, the SHO may consider the offender's disciplinary chronology and the seriousness of the offense, so long as the punishment does not exceed the maximum time for commitment. 103 Code Mass. Regs. §§ 430.09(4) & (5), 430.16, 430.25 (1993). These factors provide sufficient limitations on the SHO's exercise of discretion.

In his materials submitted in opposition to the defendants' motion for summary judgment, Todd provides several disciplinary reports of other prisoners referred for DDU sentencing and argues that disparities exist with respect to the lengths of sentences imposed for offenses similar to his. To reproduce all of them would unduly prolong this opinion. Seven of these D-reports reveal consistent application of the factors discussed above. Cf. *Commonwealth* v. *Bianco*, 390 Mass. 254, 259 (1983) (a judge may consider a broad range of factors in making sentence determinations); *Commonwealth* v. *Knight*, 392 Mass. 192, 196-197 (1984). Disparities may legitimately exist because of the variables involved in an offender's past history. We see no reason why these principles do not apply here. Enumerated in the regulations outlining whether to classify an offense as minor or major, 103 Code Mass Regs. § 430.09(4), and no doubt applied in Todd's case, are the same factors referenced in determining a proper sanction — the inmate's disciplinary history, the threat he poses to institutional security, and the extent of the harm done to the correctional officer. See 103 Code Mass. Regs. § 430.16 (1993). When supplemented by these factors, the regulations and the undisputed facts form a sufficient basis for granting summary judgment on Todd's due process claim.

2. *Equal protection challenge.* The Superior Court judge also granted the department's motion on Todd's equal protection challenge. See note 5, *supra*, and accompanying text. Todd argues that the department violated his right to equal protection under arts. 1, 10, 11, and 12 of the Declaration of Rights of the Massachusetts Constitution, the Massachusetts Equal Rights Amendment, the equal protection clause of the Fourteenth Amendment to the United States Constitution, and G. L. c. 93,

§ 102,[8] by applying 103 Code Mass. Regs. §§ 430.09(2) and 430.25(3)(d) to male prisoners in the correctional system, but not to female prisoners incarcerated at MCI-Framingham, the sole MCI facility for female prisoners.

Equal protection claims are divided into different categories. Nowak & Rotunda, Constitutional Law 597 (5th ed. 1995). The type of claim that Todd is making is predicated on the government's unequal application of a facially neutral statute or regulation on an unjustifiable basis such as race or gender.[9] See *Yick Wo* v. *Hopkins*, 118 U.S. 356, 373-374 (1886); *United States* v. *Armstrong*, 517 U.S. 456, 464-465 (1996). Todd specifically argues that the department has selectively applied DDU sanctions against male prisoners and not against female prisoners who commit the same or similar offenses, and that selective enforcement has resulted in the imposition of more severe sanctions on male prisoners.

We analyze Todd's equal protection challenge in the summary judgment context, as the judge did in granting the department's motion and considering its affidavit. See note 5, *supra*, and accompanying text. While we ultimately defer to the department as to its purposes in promulgating and applying the regulations governing confinement to the DDU, the department here possessed the initial burden to demonstrate that summary judgment was warranted as a matter of law. We are therefore handicapped — and, so far as appears from the record, the motion judge was, as well — by not having been furnished with materials indicating why the regulations here, which are facially neutral, do not apply to female prisoners. Contrast *Chavez* v. *Illinois State Police*, 251 F.3d 612 (7th Cir. 2001) (granting defendant's motion for summary judgment in selective prosecution case dealing with racial profiling in traffic stops).

The lone affidavit supplied by Commissioner Maloney, detailing his reasons for establishing the DDU at MCI-Cedar Junc-

---

[8]As to whether G. L. c. 93, § 102, applies to punishment within the prison context, the plaintiff's brief does not rise to the proper level of appellate argument. See *Commonwealth* v. *O'Brien*, 423 Mass. 841, 851 n.17 (1996), quoting from *Lolos* v. *Berlin*, 338 Mass. 10, 14 (1958) (a "terse and very sketchy reference" to the issues is insufficient).

[9]See *United States* v. *Virginia*, 518 U.S. 515 (1996); *Attorney Gen.* v. *Massachusetts Interscholastic Athletic Assn.*, 378 Mass. 342 (1979).

tion, falls short of what Mass.R.Civ.P. 56, 365 Mass. 824 (1974), requires. Indeed, Todd emphasizes the insufficiency of this affidavit. In pertinent part, it states, "In my professional experience and opinion, female inmates are far less likely to engage in as violent, predatory and repetitive kind of disciplinary conduct as men and for that reason . . . MCI-Cedar Junction [has] substantially different security characteristics . . . and a comparable DDU for female inmates has not, and may never be, constructed." Nothing in Commissioner Maloney's affidavit provides factual support for this stereotypical assertion, and it is, alone, an insufficient basis for allowing summary judgment in this case. See *Aronson* v. *Commonwealth,* 401 Mass. 244, 251-253 (1987), cert. denied, 488 U.S. 818 (1988). According to the department's memorandum introducing the regulations governing confinement to the DDU, this severe sanction is reserved for male prisoners, who, like Todd, commit additional major offenses. Nonetheless, the mere assertion of separate security characteristics and disciplinary systems for male and female prisoners does not suffice to explain why the DDU regulations were not selectively applied to Todd, or all males, with a discriminatory purpose, and therefore does not suffice to negate Todd's equal protection claim. See *id.* at 252-253 (dealing with affidavit's justification for State law that discriminates against interstate commerce).

As the party moving for summary judgment, the department here had the burden under rule 56(c) "to show by credible evidence from [their] affidavits and other supporting materials that there is no genuine issue of material fact and that [they are] entitled, as matter of law, to a judgment. See 6 J. Moore, Federal Practice par. 56.15[3] (2d ed. 1975)." *Smith* v. *Massimiano,* 414 Mass. 81, 85 (1993), quoting from *Community Nat'l. Bank* v. *Dawes,* 369 Mass. 550, 554 (1976). "The inference to be drawn from the burden placed on the moving party is that his failure to establish the absence of a genuine issue of material fact must, without more from his opponent, defeat his motion." *Id.* at 85-86, quoting from *Community Nat'l. Bank* v. *Dawes,* 369 Mass. at 554. Thus, while there is no requirement to submit affirmative evidence, the moving party on summary judgment must still demonstrate, by reference to rule 56(c) materials, that

the party who will have the burden of proof at trial has no reasonable expectation of carrying that burden. *Id.* at 86. The moving party did not do so in *Smith* v. *Massimiano*, 414 Mass. at 85-87, and the same failure prevents us from affirming the judge's allowance of summary judgment in this case.

In this regard, we may take as undisputed the background facts set forth in Todd's verified complaint and not contested by the department, including the lack of a DDU at MCI-Framingham. *Godbout* v. *Cousens*, 396 Mass. 254, 262-263 (1985). There may be many reasons behind the department's establishment of the DDU at MCI-Cedar Junction and not at MCI-Framingham. The department's sparse affidavit does not supply the specific reasons why the department has chosen only to apply the DDU regulations to male prisoners. See *Aronson* v. *Commonwealth*, 401 Mass. at 252-253. If there are other factors that support the department's decision to subject male and female prisoners to different disciplinary systems, they are not before us. For these reasons, the judge erred in granting summary judgment on Todd's equal protection claim on the record presented.

3. *Conclusion.* The judge below correctly determined that summary judgment was warranted on Todd's due process claim. That portion of the judgment is modified to include a declaration that the plaintiff has not shown that 103 Code Mass. Regs. §§ 430.09(2) and 430.25(3) as here applied violated the plaintiff's rights under the due process clauses of the State and Federal Constitutions. As so modified, that portion of the judgment is affirmed. However, the judge erred in allowing summary judgment on Todd's equal protection claim. So much of the judgment as pertains to that claim is vacated.

*So ordered.*