Fahey, J.
INTRODUCTION
The plaintiff, Michael Kevin DuPont (“DuPont”), is a prisoner currently incarcerated at MCI-Cedar Junction in Walpole. In 1993, the Department of Corrections (“DOC”)[2] sentenced DuPont to an 18-month term in the Departmental Disciplinary Unit (“DDU”) after DuPont committed a serious violation of prison rules.[3] DuPont then filed this suit for declaratory and monetary relief, claiming that his confinement violated various portions of state and federal law. Specifically, DuPont claims that because the DDU is used as a sanction for male inmates only, the DOC’s actions violated the Code of Massachusetts Regulations as well as DuPont’s liberty interests guaranteed under Massachusetts law and his due process and his equal protection rights guaranteed under the Fourteenth Amendment to the United States Constitution and Articles 1, 10, and 12 of the Massachusetts Declaration of Rights.
On December 23, 1997, this court (Hinkle, J.) allowed a motion by the defendants for summary judgment on all counts. DuPont appealed, and, on March 25, 2002, the Appeals Court affirmed the decision to grant summary judgment on all counts except the equal protection claim. The Appeals Court concluded the evidence in the record was insufficient to determine as a matter of law that the DDU could be applied to male prisoners only. The Appeals Court then vacated judgment on the equal protection count and remanded the case for further proceedings. On March 24, 2004, the defendants filed this renewed motion to dismiss or, alternatively, for summary judgment. For the reasons stated below, the motion is DENIED.
Because this court is concerned about the correctness of this decision, as well as its impact on the court’s “micromanagement” of prisons and the floodgate potential for suits to be brought by current and former inmates of the DDU claiming a denial of equal protection under the Massachusetts Declaration of Rights, this court exercises its discretion to report its decision to the Appeals Court. See MASS. GEN. LAWS c. 231, 111, para. 2 (2002); Mass.R.Civ.P. 64(a). Precedent in Massachusetts suggests that prison regulations as promulgated by the DOC should not be subject to strict scrutiny but rather should be regarded with deference, lest the courts begin to micromanage the prison system. See Cacicio v. Sec’y of Pub. Safety, 422 Mass. 764, 769-70 (1996); Kenney v. Comm’r of Corr., 393 Mass. 28, 35 (1984). In the interest of judicial economy, this court finds it appropriate to report to the Appeals Court the correctness of this court’s decision, as well as the following question:
*396 Should prison regulations, contested on an “as applied” basis by individual inmates as violating equal protection rights based on a suspect classification such as gender, be considered through the lens of rational basis scrutiny or by the more rigorous strict scrutiny analysis?
DISCUSSION
Where parties provide affidavits in connection with a motion to dismiss, the presiding judge may properly, with notice to the parties, treat the motion as one for summary judgment. Taplin v. Town of Chatham, 390 Mass. 1, 2 (1983); Mass.R.Civ.P. 12(b)(6). Summary judgment is appropriate where there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983); Cmty. Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case, or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
An essential inquiry in an equal protection claim is whether a claimant is similarly situated to those who allegedly receive more favorable treatment. Matter of Corliss, 424 Mass. 1005, 1006 (1997); Murphy v. Comm’r of the Dep’t of Indus. Accs., 415 Mass. 218, 226 (1993); see Sinn v. Selectmen of Acton, 357 Mass. 606, 611 (1970). I accept that the Appeals Court implicitly found valid DuPont’s argument that male and female prisoners are similarly situated; otherwise the court likely would not have returned the case to the Superior Court for further consideration only of DuPont’s equal protection claim. See Todd v. Comm’r of Corr., 54 Mass.App.Ct. 31, 37-40 (2002) (vacating lower court’s order granting of summary judgment to the defendant on claim identical to that of the present case).
In the present case, neither party specifically contends that the regulations controlling the DDU are discriminatory on their face. While DuPont asserts that “statutory classifications that distinguish between males and females are ‘subject to scrutiny under the Equal Protection Clause,’ ” citing Reed v. Reed, 404 U.S. 71, 75 (1971), he has pointed to no statute that on its face engages in gender-based discrimination; in fact, he cites a United States Supreme Court case discussing a facially neutral statute. See Pl.’s Opp’n to Defs.’ Mot. to Dismiss (“Pl.’s Opp’n”) at 14-15. DuPont compares his circumstances to those in Craig v. Boren, where the Court invalidated a state statute that explicitly contained distinct provisions for males and females. See 429 U.S. 190, 191-92, 191 n.1, 208-10 (1976); Pl.’s Opp’n at 10-11. In the case at bar, however, the regulations governing the DOC’s operations, including those of the DDU, have been found to apply universally to all inmates regardless of gender; thus, this court considers DuPont’s claim as an “as applied” challenge, rather than also as a facial challenge. See 103 MASS. REGS. CODE, 430.04 (1993) (“103 CMR430.00 [regarding the DOC’s operations] is applicable to all employees and to inmates housed at all correctional institutions within the Department of Corrections”); Torres v. Comm’r of Com., 427 Mass. 611, 612-13, 619 (1998), cert. denied, 525 U.S. 1017 (1998) (discussing DDU regulations in gender-neutral terms; upholding the lower court’s implicit factual determination that DOC regulations apply to all inmates); Todd, 54 Mass.App.Ct. at 32-33 (“the uncontroverted facts show that the regulations apply to all prisoners . . .”) The central question before this court, therefore, is whether the regulations concerning the DDU as applied to DuPont violate his equal protection rights; in other words, whether the absence of an identical DDU for women is unconstitutional.
An “as applied” challenge on the basis of equal protection is a “challenge to the unequal enforcement of an otherwise valid statute against a protected class of persons.” Commonwealth v. Chou, 433 Mass. 229, 238 (2000); see 103 MASS. REGS. CODE, 430.09 and 430.25(d)(3) (1993) (discussing the DDU). The federal courts have determined that gender-based class distinctions merit heightened scrutiny, but Massachusetts, with the additional provisions stated in Art. 106 (the Equal Rights Amendment) of the Declaration of Rights, requires the application of strict scrutiny principles. Chou, 433 Mass. at 237 n.6; Attorney Gen. v. Massachusetts Interscholastic Athletic Ass’n, Inc., 378 Mass. 342, 354 (1979); Commonwealth v. King, 374 Mass. 5, 21 (1977). A regulation or statute facing a strict scrutiny analysis must be held unconstitutional unless the suspect classification “further[s] a demonstrably compelling interest and limit[s] [its] impact as narrowly as possible consistent with [its] legitimate purpose.” King, 374 Mass. at 28.
The DOC, in its motion for summary judgment, implicitly contends that it possesses a compelling interest justifying differing treatment along gender lines;[4] It argues that male inmates are more violent than female inmates and thus require more severe punitive measures so as to “provid [e] a safe and secure correctional environment for other inmates, correctional staff, and the public.” See 2nd Aff. of Michael Maloney (“2nd Aff.”) at 2; Defs.’ Mem. in Supp. of Renewed Mot. for Summ. J. on the Remaining Equal Protection Claim (“Defs.’ Mem.”) at 4-5. The DOC asserts that it need not establish a DDU for female inmates because they are far less likely than their male counterparts to engage in the violent, predatory, and *397 repetitive behavior that leads to confinement to the DDU. To support its position, the DOC offers a statistical table that lists the number of assaults committed by male and female inmates between 1994 and 2002. See Defs.’ Mem., Ex. F-l. In addition, the DOC includes materials describing male violence in prisons, specifically involving homicide, gang violence, and riots.[5] See Defs.’ Mem., Ex. F-2 and F-3. Although the DOC admits that the percentage of male and female inmates who commit assaults is relatively equal, it maintains that the lack of a DDU for female inmates is justified because “the assaults between male inmates are far more violent when looked at on a case-by-case basis.’’[6] 2nd Aff. at 4. DuPont, on the other hand, alleges that the data provided by the DOC must be examined solely by reference to percentages and not by raw numbers. Because any inferences drawn from the evidence at the summary judgment stage must be made so as to benefit the nonmoving party, this court must accept the interpretation of the data as suggested by DuPont. Parent v. Stone & Webster Eng’g Corp., 408 Mass. 108, 112-13 (1990); see Attorney Gen. v. Bailey, 386 Mass. 367, 371 (1982), cert. denied, 459 U.S. 970 (1982); Hub Assocs. v. Goode, 357 Mass. 449, 451 (1970). A review of the data by percentages reveals that female inmates, not males, engage in assaults on staff and other inmates to a proportionately greater degree than their counterparts. As a result, the DOC cannot meet the requirements of the lower reasonable relation standard, let alone those of the strict scrutiny test, for there can be no reasonable relation to valid penological interests for the differing treatment where male inmates are not conclusively more violent than females and thus do not necessarily require more strict punitive measures so as to more effectively secure the safety of staff and other inmates. See Abdul-Alazim v. Superintendent, Massachusetts Corr. Inst., 56 Mass.App.Ct. 449, 455-57 (2002) (discussing differences between reasonable relationship and strict scrutiny standards in the prison context and finding that defendants did not meet their burden to satisfy even the lower threshold).
Even if this court accepts arguendo that the DOC has demonstrated that its discriminatoiy application of its regulations furthers a compelling interest, the DOC’s motion for summary judgment must be denied for failure to show sufficient evidence regarding the second component of the strict scrutiny analysis, that the gender-based classification “limit[s] [its] impact as narrowly as possible consistent with [its] legitimate purpose.” King, 374 Mass. at 28. Where this court must use the strict scrutiny analysis, the DOC must satisfy both prongs of the test, but nothing in the record demonstrates the absence of a less harmful alternative. In fact, DuPont notes that the punishment for women who commit offenses similar to those committed by men who are sent to the DDU is a period of solitary confinement lasting at most thirty days. Pl.’s Opp’n. at 5. The DOC has made no showing that placing men in solitary confinement for no more than thirty days as punishment for the same crimes would not further the same “compelling” interest purported to be served by the DDUthat of protecting the staff and other inmates from the most violent offenders.
Since the DOC has not provided evidence affirming the absence of any triable issue of fact, a grant of summary judgment is inappropriate. See Pederson, 404 Mass. at 16-17; Mass.R-Civ.P. 56(c). First, the record establishes, on at least an inferential basis, the conclusion that even those female inmates who commit the same offense as their male counterparts are not sent to any DDU. If there are equally violent women in the prison system, the DOC must satisfactorily explain why the DDU is not a sanction available for women. See King, 374 Mass. at 19 (stating that “a female charged with prostitution or night walking would be entitled to dismissal of the charges with prejudice on an appropriate showing that the police department or the prosecutor’s office followed an unjustifiable policy of selective enforcement against female prostitutes and not male prostitutes”). Given DuPont’s arguments regarding the DOC’s statistics, and examining them in terms of percentages and not by raw numbers, questions remain as to whether men are, in fact, more violent than women and thus require more stringent punishment so as to promote safety in the correctional system. See Pl.’s Opp’n at 12-13. These questions of fact cannot be reconciled at the summary judgment stage. Second, the DOC has failed to establish that having a DDU only for men effects the narrowest possible impact consistent with its legitimate penological interest. As a result, a grant of summary judgment must be denied.
ORDER
For the foregoing reasons, it is hereby ordered that the defendants’ motion to dismiss, or alternatively, for summary judgment, is DENIED. This court’s decision and question is reported to the Appeals Court, and this matter is stayed, except as to what is necessary to preserve the rights of the parties, pending a decision by the Appeals Court.

“DOC” refers to all defendants collectively.

DuPont eventually served 55 months in the DDU.

The DOC contends that this court must grant summary judgment because DuPont cannot show that male and female Inmates are similarly situated and therefore has not met the threshold requirement for an equal protection claim. As aforementioned, this court infers from the Appeals Court decisions in this case and in Todd that the Appeals Court has implicitly accepted that male and female inmates are, in fact, *398 similarly situated. See Todd, 54 Mass.App.Ct. at 37-40. The DOC does not specifically address the question of which level of judicial scrutiny would be appropriate in the event that this court proceeds to the equal protection analysis, but merely states that the establishment of a DDU “hardly runs afoul of the Equal Protection Clause, regardless of whether a court applies the heightened strict scrutiny test ordinarily applied to gender-based discrimination [at the federal level] or the lower ‘reasonableness’ standard more commonly applied in the prison context.” Defs.’ Mem. at 7. This court must employ the most stringent test, that of strict scrutiny. See, e.g., Chou, 433 Mass. at 237 n.6; King, 374 Mass. at 21. This court infers that the DOC’s “compelling interest,” never specifically identified as such in the DOC’s materials contained in the record, would best be stated as reported in Michael Maloney’s Second Affidavit, quoted in the accompanying text above. In addition, the DOC argues that DuPont’s equal protection claim must fail because he has not provided materials discussing discriminatory intent or purpose. This court rejects this contention, as it is undisputed that a DDU exists for male inmates but not for females, where discrimination occurs based on a suspect classification, such as gender in this case, thus requiring a strict scrutiny analysis, the intent or purpose of the alleged discrimination need not be addressed. See, e.g., Chou 433 Mass. at 237 n.6; Massachusetts Interscholastic Athletic Ass’n, 378 Mass. at 354.

This court finds unpersuasive DuPont’s contention that the statistics regarding such incidents are irrelevant to the question of whether male inmates are more violent than female inmates because they do not relate to the purpose behind the creation of the DDU. The existence of the DDU is not at issue here; as aforementioned, the DOC promulgated 103 MASS. REGS. CODE, 430.00-430.29 so as to apply to all inmates regardless of gender. The question before this court is solely whether the regulations as applied to Dupont violate his equal protection rights, and the materials provided in Defendants’ Ex. F-2 and F-3 are germane to the issue of whether there is a basis for distinguishing between male and female inmates for the purposes of defining the DOC’s compelling interest.

The DOC’s statistics, while divided into the general categories of “physical assaults without a weapon,” “assaults with a weapon,” “assaults by food and/or fluid,” and “cases of inmate-on-inmate assault,” are of little help in assessing the actual degrees of violence involved. For example, physical assaults without a weapon can be but are not, at least in the manner vaguely described by the DOC, necessarily less violent than physical assaults with a weapon.