McDonald, C. Brian, J.
The plaintiff, Lindsey Thomka, a female student at Cathedral High School (Cathedral) and member of the school’s mixed-gender golf team, brought this action against the defendants, seeking: (1) a declaratory judgment, specifically, a ruling that Rule 43.2.1.2 of the Massachusetts Interscholastic Athletic Association (MIAA) discriminates on the basis of sex and violates the Massachusetts Equal Rights Amendment (ERA), (2) equitable relief, enjoining the defendants from enforcing MIAA Rule 43.2.1.2, and (3) judgment in her favor and award of damages and fees under the ERA, G.L.c. 76, §5, and 42 U.S.C. §1983.[3] The claims center around the absence of opportunities for female golfers, participating in interscholastic competition in the fall, to compete *264 in a state tournament to crown an individual champion in the fall season. The plaintiff argues that, in light of her golfing talent, she should be able to participate in the boys’ individual championship in the fall season where the level of competition is higher, where there is greater attendance of college coaches and recruiters, and where she can better showcase her golfing talents. After a jury-waived trial, the court makes the following findings of fact and rulings of law.

FINDINGS OF FACT

There are few facts in dispute. The parties stipulated to facts and the trial evidence added little to the stipulation.
The MIAA regulates and governs athletics among most public secondary schools and some private secondary schools in Massachusetts. MIAA member schools (hereinafter schools) wishing to participate in golf may choose to do so in the fall or in the spring, but not both. The fall season is longer than the spring season. At schools where there is insufficient student interest to establish separate boys’ and girls’ teams, the schools may field mixed-gender teams. MIAA Rule 43 provides for mixed-gender teams and determines whether a mixed-gender team participates in the boys’ or girls’ team championship competition.[4] MLAA Rule 43.2.1.2 provides that students who participate in mixed-gender teams will participate in regional and state tournaments of their own gender in those sports, including golf, where tournament competition crowns individual champions.[5]
Contrary to certain of the defendants’ evidence, golf is not one of the sports offering “four separate categories of champions . . . each season: boys team, boys individual, girls team, and girls individual.”[6] For golf, as demonstrated by other of the defendants’ evidence, there is no girls’ individual championship in the fall season and apparently no girls’ team championship in the fall season. They must wait until the spring season.[7] As the defendants’ evidence demonstrates, girls who might be eligible for individual championship competition, by reason of their performances in the fall golf season on mixed-gender teams, also will find that competition only in the spring.
With respect to the number of female golfers and all-female or mixed-gender golf teams, the record contains significant omissions. Most significant, there is no evidence of the number of all-female golf teams in the fall and spring seasons, the number of mixed-gender teams playing in the fall and spring seasons, the number of female golfers playing on mixed-gender teams in the fall and spring seasons, and whether female golfers compete for a state team championship in the fall season. There also is no evidence about the format for tournament play.
Pursuant to MIAA Rule 70.2, in mixed-gender (and all-female) golf teams, girls play from the front tees, which have a shorter distance from tee to cup.[8] The shorter distance may affect the play of the holes. Other than MIAA Rule 70, rules of the United States Golf Association (USGA) govern golf play.[9] MIAA Rule 70.2 is intended to create a competitive balance for girls playing on a mixed-gender team. It is common knowledge that women golfers generally compete from the front tees. It appears that no other sport supervised by the MIAA has such a handicapping based on gender. The rules apparently do not address whether male golfers competing on mixed-gender, predominately-girls’ teams, if there are any, compete from the front or rear tees, unless the USGA rules address the point, but I infer they do not.
In the fall golf season, the culmination of the competition is a tournament that crowns an individual boy champion and a team (boys’ or mixed-gender) champion (the state tournament).[10] As noted, in the fall golf season there is no state tournament competition to crown a girls’ individual champion and apparently no state tournament to crown a girls’ team champion.
In contrast, in the spring golf season, there is a boys’ state tournament and a girls’ state tournament. The annual boys’ tournaments are held at various and changing locations. The girls’ tournament has been held exclusively at the Woodland Golf Club for over thirty years. Counsel for the defendants implied that the quality of this facility justified the spring-only girls’ tournament. No evidence explained whether a girl playing on a predominately boys mixed-gender team in the spring season would be able to compete for the individual girls’ championship, if her team qualified for the boys’ team championship.
Eligibility for the fall state tournament begins with standards to compete in several regional tournaments. Teams and individuals may qualify for regional tournament competition based on performance over the course of the season. As noted, there was no evidence of the formats of the regional and state tournaments. The fall regional tournaments are open to teams that are all-male or are mixed-gender. I assume that the mixed-gender teams in fall competition are predominately male and play as boys’ teams. The record, as noted, contains no information about the numbers of competitors, their genders, or their team compositions.
Teams qualify for the state tournament by finishing in the top three teams of the regional tournaments. It appears that boys who are on teams that finish in the top three also are eligible to compete for the boys’ individual championship. Golfers who are not girls, whose teams do not qualify for the state team championship, qualify for the state individual championship by scoring within the top ten individuals’ scores in the regional tournament. The record is silent as to whether this top ten includes the scores of boys whose teams have qualified or includes only the scores of those whose teams did not qualify.
Girls on mixed-gender teams are eligible to compete only for the team championship in the fall season. *265 Girls whose mixed-gender teams do not qualify for the fall state tournament, regardless of their individual scores, must wait until spring to participate in the girls’ individual state tournament, notwithstanding that they cannot play interscholastic golf in the spring leading up to the tournament, because their schools have chosen to play golf in the fall. Such was the plaintiffs situation.
The individual boys’ state champion is, presumably, determined by low score. The record is silent as to whether separate competitions áre held for the individual and team titles, or whether a single competition determines individual and team titles. The state team champion is, also presumably, determined by low total team score. The score of a girl playing on a mixed-gender team is a component of her team’s score in equal measure as her male teammates, notwithstanding that she was hitting from the front tees pursuant to MIAA Rule 70.2. Thus, while the defendants permit a girl’s score from the front tees to carry her mixed-gender team to victory in the team championship competition, her score cannot qualify her, or carry her to victory, in an individual championship in the fall season.
In the fall of 2004, Cathedral, a member of the MIAA, fielded a mixed-gender golf team, of which the plaintiff was a member. Her scores qualified her for the girls’ individual state tournament in the spring of 2005. She did participate in the 2005 spring girls’ individual state tournament and finished second. She was at a disadvantage as she did not compete in interscholastic golf in the spring of 2005 and, therefore, did not have the benefit of a season of competition, coaching, and team camaraderie in her preparation for tournament play. The general level of competition is lower in the girls’ individual tournament competition, as the qualification standard is achieving ten scores under 100 during the season, from the front tees, whether in interscholastic competition or otherwise. The qualifying scores for the boys’ individual state championship from the Western Massachusetts regional tournament were between 78 and 71 in the fall of 2005.
In the fall of2005, Cathedral fielded a mixed-gender golf team in the regional tournament. The plaintiff, then a sophomore, was one of the top golfers on the team throughout the season. She finished the regular season with the lowest average score on the team. In the regional tournament, Cathedral did not qualify for the state tournament as one of the top three teams. The plaintiff, however, playing from the front tees, was one of the top ten finishers by individual score; she finished fourth with a score of 74. She was denied entry to the state tournament for the individual championship, notwithstanding her score, because of her gender. She was, instead, pointed to the girls’ state tournament in the spring. She participated in the 2005 fall state tournament for the individual championship by reason of a preliminary injunction issued by the court (Sweeney, J.). The record is silent as to whether any girls participated in the 2005 fall state team championship competition by reason of participation on mixed-gender teams.
As the plaintiff was participating in the 2005 fall state tournament for the individual championship pursuant to the court’s order, MIAA Rule 70.2 was interpreted to require her to play from the back tees, which provide a longer distance from tee to cup. The plaintiff did not then and has not in this action sought to participate in the fall.state tournament utilizing the front tees.[11] Counsel for the defendants repeatedly pointed out in written submissions and oral argument that at the 2005 fall state tournament the plaintiff finished last. Counsel had to acknowledge, however, that someone, male or female, always finishes last in the tournament, and could offer no explanation why the plaintiffs place of finish was relevant to the issues raised by this action. It was an ad hominem insult that should have been retracted by the defendants but was not.
So, for boys there is the opportunity to play golf in the fall or in the spring, depending upon the choices made by their schools, and to compete for individual and team state championships in each season. For girls, there is the chance to play golf in the fall or in the spring, depending upon the choices made by their schools, but they can compete for individual (it is clear) and team (it appears) state championships only in the spring, regardless of whether they participated in interscholastic golf competition in the fall or spring season. Thus, girls whose schools played golf in the fall, nevertheless are allowed to compete only in the spring individual state tournament, and must do so without a season of competition, coaching, and camaraderie, and despite the fact that their time and energy for interscholastic sports may be devoted in the spring to track, softball, tennis, or field hockey rather than golf.[12] The record is silent as to whether there are schools with girls’ golf teams that compete in the fall season despite the fact that, apparently, they will be allowed to compete in a state tournament only in the spring.
The plaintiff complains in part that the fall tournament has better competition because there are more participants and higher qualifying standards to advance from the regional tournament, attracts more public attention, attracts the attention of more college coaches interested in recruiting golfers, and is better timed to coincide with the college application process and the possibility of scholarship opportunities. It is common knowledge that the application process for college admissions occurs in the fall. There was no evidence, however, that coaches of college female golf teams attend the boys’ fall tournament or that college golf teams are ready to integrate genders.
*266 The defendants disclaim any intent or interest to encourage the recruiting of high school golfers by college coaches, with or without scholarship opportunities. Such disclaimer is entirely disingenuous. No high school educator or education association can deny the importance .of scholarship assistance to cope with the expenses of college education, and none can deny that athletic scholarships are a very important resource in this regard. Would that it were otherwise, but the reality is that athletic scholarship assistance provides opportunities for college education not otherwise available. Furthermore, it is well known that high school coaches strive to secure athletic scholarships for worthy student-athletes.

RULINGS OF LAW

The plaintiff seeks a declaration that MIAA Rule 43.2.1.2 discriminates on the basis of sex and violates the ERA.
[T]he superior court . . . may on appropriate proceedings make binding declarations of right, duty, status and other legal relations sought thereby, either before or after a breach or violation thereof has occurred in any case in which an actual controversy has arisen and is specifically set forth in the pleadings and whether any consequential judgment or relief is or could be claimed at law or in equity or not. . .
G.L.c. 231A, §1. “It is a predicate of juris diction under c. 231 A, §1, that ‘an actual controversy [has] arisen.’ ” Alliance AFSCME/SEIU, AFL-CIO v. Commonwealth, 425 Mass. 534, 536 (1997). “Such proceedings are concerned with the resolution of real, not hypothetical, controversies; the declaration issued is intended to have an immediate impact on the rights of the parties.” Massachusetts Ass’n. of Indep. Ins. Agents and Brokers, Inc. v. Commissioner of Ins., 373 Mass. 290, 292 (1977) (citations omitted). “Even if there is an actual controversy, the particular plaintiff must demonstrate the requisite legal standing to secure its resolution." Id. (citation omitted).
An actual controversy exists between the plaintiff and the defendants for purposes of G.L.c. 231A. In her amended complaint, the plaintiff sufficiently sets forth a dispute over the application of MIAA Rule 43.2.1.2 to female golfers competing in the fall and the absence of an individual state tournament in the fall in which female golfers may compete, whereas male golfers may qualify and compete in a boys’ individual state tournament in either the fall or the spring, depending upon what season their school chooses to compete in. During the fall of 2004, the plaintiff, as a member of Cathedral’s mixed-gender golf team, qualified for the 2005 spring girls’ individual state tournament. She, however, competed in the spring girls’ individual state tournament at a disadvantage, as she did not have the benefit of a season of competition, coaching and camaraderie in preparation for the tournament. The plaintiff competed in the 2005 fall boys’ individual tournament, after qualifying by score, by reason of a preliminary injunction issued by the court.[13] Clearly, as the rule stands now,- if the plaintiff qualifies to compete in the fall state tournament in 2007, she will either be forced to come to court yet again and move for a preliminary injunction or be forced to wait, at her disadvantage, until the spring to compete for the state crown.
The plaintiff has standing to bring her claim as she has shown that “the challenged action has caused [her] injury.” Barbara F. v. Bristol Div. of the Juvenile Court Dep’t., 432 Mass. 1024, 1025 (2000) (citation omitted). If not for court order, the plaintiff would have been prevented by MIAA Rule 43.2.1.2 from participating in the 2005 fall state tournament on the basis of her gender. “A plaintiff must have standing, a definite interest in the matters in contention in the sense that his rights will be significantly affected by a resolution of the contested point.” Bonan v. Boston, 398 Mass. 315, 320 (1986). The plaintiff has demonstrated that competing in the spring state tournament, instead of the fall, puts her, and other female golfers whose schools choose to compete in the fall season, at a disadvantage because such female golfers do not have the benefit of a season of competition, coaching, and camaraderie to prepare for tournament play. A declaration by the court that MIAA Rule 43.2.1.2 discriminates on the basis of gender and violates the ERA would significantly affect the rights of the plaintiff and other female golfers whose schools choose to compete in the fall season, as such declaration, along with an order to amend such rule to comply with the law, would ensure that female golfers were no longer forced to compete at a disadvantage.
The ERA provides, “Equality under the law shall not be denied or abridged because of sex, race, color, creed or national origin.” Mass. Const., art. I of the Declaration of Rights, as amended by art. 106 of the Amendments. “(T]he constitutional prohibition of discrimination based on sex expressed in art. 1 of the Declaration of Rights is directed against State action.” United States Jaycees v. Massachusetts Comm’n Against Discrimination, 391 Mass. 594, 609 n.9 (1984). Actions of the MIAA and its rules must be considered state action for legal purposes. Attorney Gen. v. Massachusetts Interscholastic-Athletic Ass’n, Inc., 378 Mass. 342, 349 (1979).[14] Therefore, MIAA Rule 43.2.1.2 is state action for legal purposes.
“A claim of gender discrimination will lie where it is shown that differential treatment disadvantages one sex over the other.” Goodridge v. Department of Pub. Health 440 Mass. 309, 351 (2003) (Spina, J., dissenting). “The central purpose of the ERA was to eradicate discrimination against women and in favor of men or vice versa.” Id. at 375 (Cordy, J., dissenting). See Attorney Gen., 378 Mass. at 357. “Consistent with this purpose, [the Supreme Judicial Court has] construed the ERA to prohibit laws that advantage one sex at the *267 expense of the other, but not laws that treat men and women equally.” Id. at 376, citing Attorney Gen., 378 Mass. at 346-49.
Here, MIAA Rule 43.2.1.2 is facially neutral. The rule appears to offer equal opportunities for male and female athletes to compete for individual, as well as team championships, in their respective sports. The rule implicitly recognizes that there may be physical differences between the genders that require an orderly determination of how athletes will compete in individual championship competitions to avoid unfair competition. The rule, however, impairs the competitive talents of the plaintiff and may prevent her from competing at the level of competition which her ability might otherwise permit. Thus, the type of claim that the plaintiff is making is predicated on the government’s unequal application of a facially neutral statute or regulation on the unjustifiable basis of gender. See Yick Wo v. Hopkins, 118 U.S. 356, 373-74 (1886); United States v. Armstrong, 517 U.S. 456, 464-65 (1996); Todd v. Commissioner of Corr., 54 Mass.App.Ct. 31, 38 (2002). See also Goodridge, 440 Mass. at 376 (Cordy, J., dissenting) (“Of course, a statute that on its face treats protected groups equally may still harm, stigmatize, or advantage one over the other”). The defendants’ failure to hold a fall girls’ individual state tournament, thereby requiring female golfers whose schools choose to compete in the fall to compete for individual, and, apparently, team championships in their off-season without the benefits of a season of interscholastic play, coaching, and camaraderie, disadvantages females. In contrast, male golfers have the opportunity to compete for individual and team state championships in whichever season their school chooses to compete and thus are never required to compete in their off-season.
“(C)lassifications based on gender, unlike race, are not inherently suspect under the United States Constitution and, therefore, are subject only to an intermediate level of scrutiny.” Brackett v. Civil Serv. Comm’r, 447 Mass. 233, 246 (2006). See United States v. Virginia, 518 U.S. 515, 532-33, n.6 (1996). See also Clark v. Jeter, 486 U.S. 456, 461 (1988). “To withstand such judicial scrutiny, the State must show that the challenged classification is ‘substantially related to an important governmental objective.’ ” Brackett, 447 Mass. at 246 (citation omitted). See Virginia, 518 U.S. at 533. “In contrast, under the Massachusetts Equal Rights Amendment, classifications on the basis of sex are subject to a degree of constitutional scrutiny at least as strict as the scrutiny required by the Fourteenth Amendment for racial classifications.” Brackett, 447 Mass. at 247, citing Attorney Gen., 378 Mass. at 354, quoting Commonwealth v. King, 374 Mass. 5, 21 (1977) (internal quotations omitted). “Such classifications ‘will be upheld only if a compelling interest justifies the classification and if the impact of the classification is limited as narrowly as possible consistent with its proper purpose.’ ” Brackett, 447 Mass. at 247, citing Lowell v. Kowalski, 380 Mass. 663, 666 (1980). The first justification offered by the defendants for such discriminatory treatment of female golfers is that the girls’ state tournament has traditionally been held in the spring at the “exclusive” Woodland Golf Club. Such justification is socially outdated and contrary to law. This tradition is clearly not a compelling interest sufficient to justify excluding the plaintiff from competing in the fall state tournament. See generally Attorney Gen., 378 Mass. at. 357-63 (discriminatory classification could not be justified on theories that the discrimination was based on biological differences between males and females, safety concerns for female athletes, or the protection of girls’ participation in sports).
The defendants also suggest that “compelling justification” for the exclusion of female golfers from participating in the fall state tournament is that another opportunity exists, i.e., the spring girls’ state tournament.[15] The spring girls’ tournament, however, is not an equal opportunity for girls playing on mixed-gender (or all-female) teams in the fall. Such girls cannot compete against the same level of competition and some of the same competitors they have faced through the fall season when their skills are their sharpest after having been honed by a season of camaraderie, coaching, and competition. Such girls do not have the opportunity for interscholastic participation, competition, and coaching in the spring, when they must compete against female competition who have had such opportunity. Moreover, as with the plaintiff, girls who participate on mixed-gender golf teams in the fall often participate in other sports in the spring, diverting their time and energy from golf. Boys who compete in golf in either season do not suffer such problems. They can compete in the state tournament in the same season as their interscholastic competition, when they have had the benefit of competition and coaching, their skills are sharpest, and their athletic attention is undivided. Further, the impact of the classification here is not limited as narrowly as possible consistent with its proper purpose, i.e., encouraging the widest possible participation in interscholastic sports programs. See Brackett, 447 Mass. at 247 (citation omitted).
In sum, the court concludes that MIAA Rule 43.2.1.2 discriminates on the basis of sex and the disadvantage to female golfers competing in the fall imposed by MIAA Rule 43.2.1.2 violates the ERA. While the defendants, to their credit, have attempted to encourage athletic participation by developing rules permitting mixed-gender competitions, and to provide a handicap to achieve some level of parity in mixed-gender competition by requiring girls to use the front tees, the defendants have treated female golfers unequally by providing them only one individual and one team championship annually, whereas male golfers *268 have two such championships annually. At the veiy least the defendants demean the athletic competitiveness and dedication of female golfers who participate in the fall season.
As a final note, it appears to the court that it is not MIAA Rule 43.2.1.2 alone that creates the problem, but rather, it is the rule in conjunction with MIAA Rule 70.2. While the plaintiff did not address MIAA Rule 70.2, and made no complaint regarding being required to play from the rear tees in the individual tournament, it appears that individuals in the plaintiffs position, qualifying from the front tees but competing from the rear tees will have achieved but a pyrrhic victory.
Several alternative ways to reconcile the rules come to mind: (a) amend MIAA Rule 70.2 to allow girls playing on mixed-gender teams to elect to play from the back or front tees, and, if they use the back tees in tournaments and qualify for individual championship competition, to compete in the boys’ individual championship competition (which would force such females to elect to assist their team by playing from the front tees or, perhaps, forsake their teams by playing from the back tees to seek individual honors), (b) amend MIAA Rule 70.2 to allow girls to use the front tees in individual (as well as team) mixed-gender competition, or (c) to have an individual girls’ state championship in the fall. The evidence does not permit the court to determine the merits of the alternatives.
“In proceedings under the declaratory judgment act, it is the duty of the judge to adjudicate the decisive issues involved in the controversy between the parties and to make declarations concerning such issues, thus putting the controversy to rest.” First Nat’l Bank v. North Adams Hoosac Sav. Bank, 7 Mass.App.Ct. 790, 797 (1979), quoting Zaltman v. Daris, 331 Mass. 458, 462 (1954). “In addition to finding that a party is entitled to relief, the judge should grant such relief so that nothing is left for future determination.” Id. at 798 (citations omitted). Accordingly, a hearing shall be held on Monday, March 5, 2007, at 2:00 p.m. to address the issue of remedy.

ORDER

For the foregoing reasons, it is ORDERED that a declaration enter, declaring that Massachusetts Interscholastic Athletic Association Rule 43.2.1.2 discriminates on the basis of sex and violates the Massachusetts Equal Rights Amendment. It is further ORDERED that the defendants be enjoined from enforcing MIAA Rule 43.2.1.2 as it applies to female golfers. It is further ORDERED that the parties shall appear before the court on March 5, 2007 at 2:00 p.m. to address the question whether the foregoing declaration “put[s] the controversy to rest ... so that nothing is left for future determination.” First Nat’l Bank v. North Adams Hoosac Sav. Bank, 7 Mass.App.Ct. 790, 797, 798 (1979).
It is further ORDERED that judgment enter for the plaintiff and that attorneys fees and costs be awarded. The plaintiffs counsel shall submit an affidavit of fees and costs within fourteen days of the date of this order. The defendant may file a response within seven days of service thereof. A hearing on the issue of fees and costs also will occur on March 5, 2007.

With respect to the plaintiffs claims under G.L.c. 76, §5, and 42 U.S.C. §1983, the plaintiff did not raise these claims at trial. Therefore, the court finds it unnecessary to analyze such claims and make rulings of law.

MIAA Rule 43.2 states, “A girl may play on a boys’ team if that sport is not offered in the school for the girl, and a boy may play on a girls’ team if that sport is not offered in the school for the boy.”

MIAA Rule 43.2.1.2 states, “Students from mixed-gender regular season teams will participate in the regional and state tournaments of their own gender in the sports of cross country, spring track, winter track, skiing, individual golf, and individual tennis.”

See Stipulation of Agreed Facts at ¶8.

The record is devoid of evidence regarding whether any schools compete with all-female golf teams in the fall.

MIAA Rule 70.2 states, “Female golfers on a boy’s team or a girl’s team must hit from the front tees.”

MIAA Rule 70.1 states, “Except as modified by the individual leagues, Massachusetts high school golf shall be played under the USGA Rules with the following modifications or exceptions.
70.1.1 Local club mies shall be in effect.
70.1.2 No coaching is to take place during a match or tournament."

While I recognize that there may be more than one individual and team champion crowned, for simplicity I refer herein to a single championship.

The court is mindful that Annika Sorenstam and Michelle Wie, among other women golfers, have attempted to compete in tournaments against male golfers and hitting from the back tees, without successfully qualifying for final round play. Nevertheless, Ms. Wie, especially, remains determined to pursue this goal. The plaintiff seeks nothing more.

This state of affairs appears to be a violation of the MIAA’s own rules. MIAA Rule 46 states,
A student-athlete shall participate in only one MIAA interscholastic sport in any defined MIAA sport season (Fall, Winter, or Spring), including tournaments and/or championships in that season. For the purposes of this rule only, a student-athlete becomes a member of his/her team for the sport season on the date of that school’s first regular season contest in that sport.
PENALTIES - If a student-athlete violates this rule, he/she will be ineligible for that season, and all contests in which he/she participated in both sports must be forfeited.
Obviously, this exact scenario is not an issue for male golfers, but the plaintiff, at least competes in a spring season sport other than golf. Other girls whose schools choose a fall golf season may be in a similar position.

 It appears that the Cathedral golf team or the plaintiff individually did not qualify for state tournament competition in 2006.

In the above-cited case, the Supreme Judicial Court noted, “Virtually all public secondary schools in the Commonwealth are members of MIAA and, by virtue of what is in effect a delegation of authority by local school committees under G.L.c. 71, §47, MIAA governs and regulates competitive sports among these schools ... All member schools undertake to submit to the rules promulgated by MIAA; they pay dues to MIAA in proportion to their student populations. (MIAA also shares in the receipts from Statewide tournaments, many of which are held on State-owned property.)" Id. at 345.

Neither party addressed the apparent inconsistency between this “opportunity” and MIAA Rule 46, prohibiting participation in more than one sport each season.